UNITED STATES, Appellee,

v.

Ronald A. JARRIE, Airman First Class,
U. S. Air Force, Appellant.

No. 33,999.
ACM S24452.

U. S. Court of Military Appeals.

July 5, 1978.

*Captain Thomas S. Markiewicz* argued the cause for Appellant, Accused. With him on the brief was *Colonel Robert W. Norris.*

*Captain Gilbert J. Regan* argued the cause for Appellee, United States. With him on the brief were *Colonel Julius C. Ullerich, Jr.* and *Major Alvin E. Schlechter.*

Opinion of the Court

FLETCHER, Chief Judge:

Contrary to his pleas, the appellant was found guilty,[1] at a special court-martial, of selling methamphetamine, in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892. The jury sentenced him to be reduced to the grade of Airman

---

1. The appellant was also found guilty, pursuant to his pleas, of selling marijuana, in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892.

Basic and to be discharged from the service with a bad-conduct discharge. The sentence as adjudged was approved by the appropriate reviewing authorities and affirmed in a brief opinion by the United States Air Force Court of Military Review.

We granted review to consider the propriety of the military judge's action at trial in denying a defense motion to strike the critical testimony of a government informant, Sergeant Rabe. The asserted ground for the motion was the failure of the Government to comply with the Jencks Act, 18 U.S.C. § 3500(c). In particular, after the testimony of Sergeant Rabe, the defense requested, but was not provided, certain written notes made by a government investigator. These notes had been verified by this informant as a correct account of his original oral statement on the incident.

It is uncontroverted that, after completing a purported drug transaction with the appellant, the government informant, Sergeant Rabe, reported this information to a military investigator, Agent MacGregor, who took notes on the oral statement made by the informant. Subsequently, apparently by telephone two weeks later, he verified the authenticity and correctness of these notes with the informant. More than nine months later, the agent prepared a formal statement on this incident which was signed by Sergeant Rabe. When he constructed the final statement, the government agent deleted from the original notes matters which he considered extraneous, including the names of two eyewitnesses to the purported transaction. The notes were then destroyed by the agent in accordance with the discretion provided to him by an asserted practice of his investigative organization. One witness was called by the defense on its own accord and flatly contradicted the testimony of the informant. Neither the agent nor the informant could recall the

second witness' identity. The Court of Military Review found that destruction of the notes by the government agent was in good faith and not designed to deprive the defense of anything of value related to the case. Moreover, it found not only that all the information in the notes was provided to the appellant but also that, beyond reasonable doubt, he was not prejudiced by the destruction of the notes.

It should be noted at the outset that although there is no way to determine whether the testimony of the unavailable eyewitness would be favorable to the appellant, it would without doubt appear to be substantially material. See *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). However, it is unnecessary to decide this case on the principles embraced in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny,[2] since this case is squarely within the scope of the Jencks Act, *supra,* and our treatment of similar difficulties with proof of prejudice in *United States v. Albo,* 22 U.S.C.M.A. 30, 46 C.M.R. 30 (1972).

■ The initial question for our consideration is whether the written notes of the government agent are producible "statements" after the testimony of the government informant, Sergeant Rabe. *See* Jencks Act, 18 U.S.C. § 3500(e)(1). · It is clear that such notes would have to be produced after the agent's testimony. *United States v. Albo, supra; see also Needelman v. United States,* 261 F.2d 802 (5th Cir. 1958), *cert. dismissed* 362 U.S. 600, 80 S.Ct. 960, 4 L.Ed.2d 980 (1960). However, where the notes are requested after the testimony of a person who did not take them, the test is whether the notes are "statements which could properly be called the witness' own words." *Palermo v. Unit-*

2. In light of the contradictory testimony of the first witness named by Sergeant Rabe as having observed this drug transaction, a question exists whether the government had a duty under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), to provide the defense with the name of the second witness. A problem arises in that there is no memory of the informant or agent as to the identity of this witness, nor any indication that the Government interviewed him and knew this testimony to be favorable to the accused. *Cf. Weatherford v. Bursey,* 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977) with *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

*ed States,* 360 U.S. 343, 352, 79 S.Ct. 1217, 1224, 3 L.Ed.2d 1287 (1959). The Supreme Court has determined that the Jencks Act would require the production of statements which could fairly be deemed to reflect fully and without distortion what had been said to the government agent and not the agent's "selections, interpretations and interpolations" of the original communication. *Id.* at 350, 79 S.Ct. 1217. In the case at bar, the agent and the informant both admitted that the informant had verified the written notes as a correct and authentic account of his original statement. This was approval or adoption within the meaning of the statute. *See Rosenberg v. United States,* 360 U.S. 367, 79 S.Ct. 1231, 3 L.Ed.2d 1304 (1959). We believe this act of verification by the informant transformed the agent's written notes into the informant's own statement for purposes of the Jencks Act. *See United States v. Carrasco,* 537 F.2d 372, 375–77 (9th Cir. 1976).

■ Nevertheless, the Court of Military Review concluded that the production of these written notes in accordance with the Jencks Act could be excused on the basis of its so-called "good faith" exception. Citing *Killian v. United States,* 368 U.S. 231, 82 S.Ct. 302, 7 L.Ed.2d 256 (1961), they found no error by the military judge, since the written notes were destroyed in accordance with routine administrative practice and not as a result of a deliberate effort on the part of the Government to hinder the defense. We believe the facts in *Killian* to be so inapposite as to fail to provide adequate support for the legal conclusion reached by the Court of Military Review in the present case. Moreover, this judicial exception to the Jencks Act is generally limited in its application. *United States v. Carrasco, supra.* In the case at bar, there was no showing by the Government[3] that these notes were destroyed prior to the contemplation of the prosecution of the appellant. In addition, omission of the names of two eyewitnesses to the transaction constituted a substantial deviation between the written

notes and the formal statement signed by Sergeant Rabe. *Id.* at 376. Finally, it is most difficult for this Court, as a matter of law, to equate the optional practice of discretionary destruction of notes with those routine administrative procedures designated as being in "good faith" in the cases cited by the Court of Military Review. We find as a matter of law that this judicial doctrine of exception is inapplicable in the present case.

■ The Court of Military Review also reasoned in the alternative that the absence of prejudicial harm to the appellant as a result of the destruction of the notes precludes reversal of this conviction. It suffices to say that, in the present case, the requested materials were not preserved for the record as required by 18 U.S.C § 3500(c). This factor alone distinguishes it from those cases cited by the Court of Military Review as support for the application of the harmless error rule. Previously, we held in *United States v. Albo, supra,* that in this situation the "appropriate corrective action" is to reverse the decision of the Court of Military Review and set aside the findings of guilty and the sentence. We so order as to the contested offense.

The decision of the United States Air Force Court of Military Review is reversed as to specification 1 of the Charge. The finding of guilty regarding that specification is set aside. The finding of guilty of specification 2 to which the appellant pleaded guilty is affirmed. The sentence is set aside. The record of trial is returned to the Judge Advocate General of the Air Force for resubmission to the Court of Military Review. That Court may either dismiss specification 1 and reassess the sentence, or order a rehearing on sentence only; or it may order a rehearing on specification 1 and the sentence.

Judge PERRY concurs.

---

3. *See Augenblick v. United States,* 377 F.2d 586, 598–99, 180 Ct.Cl. 131 (1967), *rev'd on* *other grounds,* 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969).

**196**

COOK, Judge (dissenting):

I disagree with the majority's application of the Jencks Act, 18 U.S.C. § 3500, in the present case. That statute was enacted in response to the United States Supreme Court's decision in *Jencks v. United States,* 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957). The Court in *Jencks* was faced with a denial of a defense request for a statement because there had been no inconsistency demonstrated between such statements and the testimony of the government witnesses. After noting that its prior decisions did not require a preliminary showing of inconsistency (an impossible burden when the defense has no access to the statement), the Court stressed the importance of such statement in cross-examining witnesses and held the defense motion for inspection of the statement should have been granted. *Id.* at 666–68, 77 S.Ct. 1007. Later cases interpreting the Jencks Act have stressed the relevancy of such statements for impeaching witnesses by cross-examination. *Palermo v. United States,* 360 U.S. 343, 350, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959); *United States v. Martin,* 565 F.2d 362 (5th Cir. 1978); *United States v. Prieto,* 505 F.2d 8 (5th Cir. 1974); *United States v. Mechanic,* 454 F.2d 849 (8th Cir. 1971), *cert. denied,* 406 U.S. 929, 92 S.Ct. 1765, 32 L.Ed.2d 131 (1972). Furthermore, the courts have rejected the contention that the Jencks Act created a general right of discovery, and have insisted that the statement relate to the direct testimony of the witness. *Killian v. United States,* 368 U.S. 231, 82 S.Ct. 302, 7 L.Ed.2d 256 (1961); *Rosenberg v. United States,* 360 U.S. 367, 79 S.Ct. 1231, 3 L.Ed.2d 1304 (1959); *United States v. Smaldone,* 544 F.2d 456 (10th Cir. 1976), *cert. denied,* 430 U.S. 967, 97 S.Ct. 1648, 52 L.Ed.2d 358 (1977); *United States v. Pennett,* 496 F.2d 293 (10th Cir. 1974); *United States v. Lepiscopo,* 458 F.2d 977 (10th Cir. 1972). The Government's obligation to produce a statement under the Act arises only after the witness has testified and the defense has no right to such statement prior to trial. 18 U.S.C. § 3500(b); *United States v. Harris,* 542 F.2d 1283 (7th Cir. 1976); *United States v. Spagnuolo,* 515 F.2d 818 (9th Cir. 1975). Finally, the courts have rejected the argument that the Jencks Act is a codification of some constitutional right. *United States v. Augenblick,* 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969); *Palermo v. United States, supra; Scales v. United States,* 367 U.S. 203, 81 S.Ct. 1469, 6 L.Ed.2d 782 (1961); *United States v. Haldeman,* 181 U.S.App.D.C. 254, 559 F.2d 31 (1976), *cert. denied* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977); *Calley v. Callaway,* 519 F.2d 184 (5th Cir. 1975), *cert. denied sub nom. Calley v. Hoffman,* 425 U.S. 911, 96 S.Ct. 1505, 47 L.Ed.2d 760 (1976).

As I view the terms of the Act and the cases applying it, the appellant's right to a witness' statement is limited to its use for impeachment purposes on cross-examination of the witness. While contradictory evidence other than an inconsistent statement is also a form of impeaching evidence, the Jencks Act is directed solely to the impeaching character of the pretrial statement itself, rather than any additional evidence that may be derived therefrom, *i. e.,* there is no general right of discovery. Judging the present case in this light, I am convinced that the accused is not entitled to relief under the Jencks Act. Apparently the majority conclude the appellant was prejudiced because the identity of a witness to the sale was lost. However, as I have previously noted, the purpose of the Jencks Act was not to provide a general right of discovery, but to permit an accused to use pretrial statements for cross-examination purposes where some inconsistencies or omissions appear in a witness' testimony. As the witness conceded in an out-of-court hearing that there was another person present, a fact which he told the agent when the notes were made, the fact that the witness could not remember the name of the person was available to the defense. Accordingly, I am satisfied the destruction of the notes did not prejudice the accused. *See Killian v. United States, supra; United States v. Hoffa,* 402 F.2d 380 (7th Cir. 1968), *vacated on other grounds,* 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969).

The question of whether a police agent's notes are producible under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), has been the source of much litigation in recent years. *See United States v. Martin, supra,* and cases cited therein. The question was raised as to the producibility of the notes of a government lawyer in *Goldberg v. United States,* 425 U.S. 94 n. 3, 109 n. 15, 96 S.Ct. 1338, 47 L.Ed.2d 603 (1976), but not decided. Some courts have declined to automatically reverse, but have ascertained whether the notes were destroyed in bad faith and whether the accused was prejudiced by the destruction of such notes. *United States v. Martin, supra; see United States v. Hurst,* 510 F.2d 1035 (6th Cir. 1975). Another court has indicated it will apply sanctions in future cases irrespective of good faith on the basis it had previously imposed some administrative preservation requirements upon the police agency involved. *United States v. Harrison,* 173 U.S.App.D.C. 260, 524 F.2d 421 (1975).

Under the circumstances of the present case, I would hold that *Brady* is not applicable. As I perceive the evidence, the notes themselves did not constitute favorable evidence for the accused. Rather, the appellant now asserts that such notes may have contained the name of a witness to the transaction in question. Accordingly, as there is no favorable evidence in the possession of the Government, the *Brady* decision is inapplicable. *Weatherford v. Bursey,* 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977); *see also United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Further, I see nothing sinister in the government witness' representation that he did not know the name of the second person; as the defense witness was present and he was not asked by defense counsel whether he knew the identity of such person, I think it fair to assume that he, too, did not know. *Brady* does not impose an obligation upon the Government to search out unknown bystanders at the scene of a crime. I would affirm the decision of the United States Air Force Court of Military Review.