UNITED STATES

v.

Sergeant Earnest J. SCOTT, FR 422–66–1666, United States Air Force.

ACM 22373.

U. S. Air Force Court of Military Review.

29 Sept. 1978.

Appellate Counsel for the Accused: Colonel B. Ellis Phillips and Captain Robert G. Gibson, Jr. Captain Larry G. Black filed a brief on behalf of the accused.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., and Captain Robert T. Mounts.

Before EARLY, HERMAN, ORSER and ARROWOOD, Appellate Military Judges.

## DECISION

ARROWOOD, Judge:

The accused was charged with two specifications of stealing government property, prescription drugs valued at $4,000.00 and one specification of attempting to sell the drugs, in violation of Articles 121 and 80, Uniform Code of Military Justice, 10 U.S.C. §§ 921 and 880.

On 15 June 1977, the case was referred to an Article 32, 10 U.S.C. § 832 investigating officer. Although not required, arrangements were made for a court reporter to record verbatim the testimony of each wit-

ness to be called.[1]   At the outset of the proceedings, the defense counsel requested a verbatim transcript of each witness' testimony.   The staff judge advocate approved the request for only the primary witness, the informant.[2]   A verbatim *recording* of the testimony of all the witnesses was made but the testimony of the witnesses other than the informant was prepared in summarized form.   These summaries were included in the investigating officer's report and provided to the defense counsel.

On 27 October 1977, some two weeks before trial, defense counsel requested that the Government furnish them verbatim transcriptions of the testimony of three special agents of the Air Force Office of Special Investigation who had testified at the investigation; Mr. Hamilton, Mr. Gonzalez and Mr. Smith.   The request was made pursuant to the Jencks Act, 18 U.S.C. § 3500.   In the written request, defense counsel recognized that entitlement to statements did not accrue until after the witness had testified on direct examination, but he made the request before trial in order to obviate the need for a delay in the trial proceedings.   When trial counsel received the request, he contacted the reporter and found that the tapes could not be located.   A thorough search was conducted, but the tapes were never found.

At trial, defense counsel moved to dismiss the charges because of the Government's inability to provide them with copies of the tapes of not only Mr. Hamilton, Mr. Gonzalez and Mr. Smith, but also those of Special Agent McHugh and the accused's com-

mander, Major Dorsey, who had assisted in the investigation.

In order to properly resolve the issue, the military judge conducted a thorough hearing as to the circumstances surrounding the loss of the tapes.   The reporter, the Article 32 investigating officer and a sergeant who assisted in preparing the written report were called.   Their testimony established that upon completion of the summaries of the witnesses' testimony, the reporter had given the tapes and the summaries to the investigating officer.   Due to illness, the reporter was then absent from work for several weeks.   The investigating officer delivered the tapes to the sergeant for use in retyping the summaries.   The latter testified that he had listened to a portion of the tapes, but found they were of no use to him.   Upon completion of the report, he placed the tapes on the desk of either the investigating officer or the reporter.   Neither the reporter nor the investigating officer recalled seeing the tapes from the time the sergeant had them.   The sergeant was not aware of the Air Force requirement to maintain these tapes.[3]

█   The Government agrees that the recorded statements of the witnesses made during the Article 32 investigation were subject to a proper request under the Jencks Act.[4]   *United States v. Combs,* 28 C.M.R. 866 (A.F.B.R.1959).   They contend, however, that the loss of the tapes relieved the Government of the duties and sanctions prescribed by the Act on the basis of its so-called "good faith" exception.   *Killian v. United States,* 386 U.S. 231, 82 S.Ct. 302, 7

---

1.   Paragraph 34e(2), Manual for Courts-Martial, United States, 1968 (Revised edition).

2.   Paragraph 3–20, Air Force Manual 111–1(C), 25 August 1975, states: "Verbatim transcripts of testimony by witnesses at an Article 32 investigation may be prepared only with the advance approval of the Staff Judge Advocate of the special court-martial convening authority."

3.   Court reporter's notes or recordings are maintained in accordance with Air Force Manual 12–50(C 16), 18 July 1977, Part Two, Table 111–1, Rule 34, page 10–374.   It states: "If documents pertain to court reporter's records consisting of court reporter's recordings and

notes from which verbatim or summarized records of trial or investigations have been prepared which are for trials by special court-martial resulting in conviction and involving bad conduct discharge and for Article 32 investigations and general courts-martial trials resulting in approved convictions then destroy 1 year after date of trial or 60 days after conclusion of appellate review, whichever is later."

4.   "[A] statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury" is subject to the Jencks Act.   18 U.S.C. § 3500(e)(3).

L.Ed.2d 256 (1961); *United States v. Carrasco*, 537 F.2d 372 (9th Cir. 1976); *United States v. Jarrie*, 5 M.J. 193 (C.M.A.1978).

■ It is clear that there is no obligation on the part of the Article 32 investigating officer to cause statements to be recorded verbatim.[5] When they are recorded, however, they must be retained.[6] Ordinary prudence dictates that evidence be properly secured until litigation is completed. Thus, the Government had a duty to maintain this evidence even in the absence of a defense request for its production.

■ We are satisfied, as was the trial judge, that the tapes were not intentionally misplaced or lost in consequence of a routine practice. Nor is there evidence of an attempt to deprive the accused of the benefit that might be gleaned from their use on cross-examination. However, we also agree with the trial judge's finding that the loss of the tapes was a result of simple negligence on the part of the individuals preparing the Article 32 investigation report; for under the circumstances of this case, the steps taken by the government to secure and maintain the tapes cannot be considered reasonable administrative practice. The judicial "good faith" exception to the Jencks Act is generally limited in its application. *United States v. Carrasco* and *United States v. Jarrie*, both supra. We decline to broaden the exception to permit the government to relieve itself of its duties by negligent administrative practices. *United States v. Combs*, supra; *Lee v. United States*, 125 U.S.App.D.C. 126, 368 F.2d 834 (1966).

Although by its negligence the Government may not rely on the "good faith" loss exception, we may still uphold the conviction if we are convinced that in this case the errors were harmless. *United States v. Walbert*, 14 U.S.C.M.A. 34, 34 C.M.R. 246 (1963); *United States v. Ellison*, 46 C.M.R.

839 (A.F.C.M.R.1972); *United States v. Carrasco*, supra. See *Killian v. United States*, supra.

In an effort to determine prejudice, the military judge called the witnesses whose testimony had been lost and out of the hearing of the court members, asked them to repeat their Article 32 testimony. Counsel for both sides were given the opportunity to cross-examine the witnesses.[7] Our review of the results of this procedure serves only to reinforce our belief that it was impossible to reconstruct the Article 32 testimony in any form that would provide the defense with statements suitable for impeachment purposes. See *United States v. Johnson*, 521 F.2d 1318 (9th Cir. 1975); *United States v. Carrasco*, supra.

■ The defense alleged the accused was "framed" as to one specification and entrapped as to the others. Therefore, the testimony of the agents who worked with the informant was critical regarding such matters as: the time they obtained knowledge of the accused's prior misconduct, their surveillance of the informant while he was dealing with the accused, the development of the plan to steal and sell the drugs, and the credibility of the informant. Comparison of the witnesses' trial testimony with the brief summaries of their testimony contained in the Article 32 investigation report, coupled with affidavits submitted by both military defense counsel who where present during the investigation, discloses numerous voids and inconsistencies. On the basis of these indicated differences, we cannot discount the possibility that the verbatim recordings of the witnesses' testimony would have enabled the accused to impeach them. A priori, we cannot agree with the military judge's ruling that the failure of the Government to provide the tapes did not substantially harm the accused. *United States v. Combs*, supra. We conclude that

---

5. Paragraph 34e(2), Manual, supra.

6. Air Force Manual 12–50, supra, note 3.

7. The military judge followed the opinion in *United States v. Miranda*, 526 F.2d 1319 (2nd Cir. 1975), by balancing the Government's mis-

conduct against the prejudice to the accused. He subsequently instructed the court they could infer that had the defense been able to use the tapes, such use would have proved beneficial to the defense.

the failure of the military judge to exclude the testimony of the witnesses constituted error prejudicial to the substantial rights of the accused. *Jencks v. United States,* 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957); *United States v. Jarrie, United States v. Combs, United States v. Carrasco,* all supra; *United States v. Albo,* 22 U.S.C. M.A. 30, 46 C.M.R. 30 (1972).

Accordingly, the findings of guilty and the sentence are set aside. A rehearing may be ordered.

EARLY, Chief Judge, HERMAN and ORSER, Judges, concur.