**UNITED STATES, Appellee,**

v.

**Sergeant Dennis E. BOSIER, SSN 463–90–5923, United States Army, Appellant.**

**SPCM 15342.**

U. S. Army Court of Military Review.

23 Feb. 1982.

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Elliot J. Clark, Jr., JAGC, Captain Charles E. Trant, JAGC, and Captain David M. England, JAGC, were on the pleadings for appellant.

Colonel R. R. Boller, JAGC, Major John T. Edwards, JAGC, Captain Kenneth H. Clevenger, JAGC, and Captain John J. Park, Jr., JAGC, were on the pleadings for appellee.

Before CARNE, Senior Judge, and O'DONNELL and FOREMAN, Appellate Military Judges.

## OPINION OF THE COURT

O'DONNELL, Judge:

At the appellant's trial, Specialist Four Dale P. Schafer, a confidential informant for the local criminal investigators, testified that he purchased marihuana from the appellant on 19 and 21 February 1980. After each transaction, Schafer made brief notes which in sum related to the time and location of the sale, the name of the appellant, and the number of his license plate. The informant orally related this information to Agent Leslie D. Allen, the criminal investi-

gator to whom he was detailed.[1] Allen made notes which he later incorporated into an official report. Sometime later, Schafer destroyed his notebook as he feared that his undercover role would be discovered by the people with whom he was living.

After the informant testified, the defense moved for production of Schafer's notes pursuant to the Jencks Act, 18 U.S.C. § 3500.[2] The judge first granted the motion. After Schafer clarified the question of whether he gave the notes to Allen and testified that he had destroyed his notebook, the defense moved to strike his testimony. The judge denied the motion on the grounds that the notes were never in the possession of the Government; that Schafer was not an agent of the Government; that the defense was aware of the discrepancies in the notes and was able to cross-examine Schafer on them; and that the information was contained in the official report prepared by Agent Allen. The appellant was convicted of wrongful possession, transfer and sale of marihuana on 19 February and wrongful sale and transfer of marihuana on 21 February. He was sentenced to a bad-conduct discharge, confinement at hard labor for two months, and reduction to the lowest enlisted grade. The convening authority approved the sentence.[3]

■ Initially, we must determine whether Schafer's notes qualified as a statement within the meaning of the Jencks Act. For our purposes, a "statement" is defined in the Act as "a written statement made by [a Government witness] and signed or otherwise adopted by him." (Section (e)(1).) Although there are cases which have questioned the applicability of the Jencks Act to agents' notes, particularly when the substance of the notes has been incorporated into an official report,[4] we believe the weight of authority today is to the contrary. *See, e.g., United States v. Harrison,* 524 F.2d 421 (DC Cir. 1975); *United States v. Johnson,* 521 F.2d 1318 (9th Cir. 1975), and cases cited therein. Agents' notes are not limited to those made during witness interviews but extend as well to notes relating to other aspects of an investigation made by investigators and undercover agents. *See, Lewis v. United States,* 340 F.2d 678, 682 (8th Cir. 1965); *Holmes v. United States,* 271 F.2d 635 (4th Cir. 1959); *United States v. Dixon,* 8 M.J. 149 (C.M.A. 1979); *United States v. Albo,* 22 U.S.C.M.A. 30, 46 C.M.R. 30 (1972). There is some

---

1. Schafer first stated, "I gave all my notes to Investigator Allen." He later testified that by so stating he meant that he conveyed the substance of the notes to Allen rather than the notes themselves, which were written in a notebook together with accounts of other drug transactions in which he was involved.

2. The Jencks Act provides pertinently:
   (a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.
   (b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.
   . . . .
   (d) If the United States elects not to comply with an order of the court under subsection (b) or (c) hereof to deliver to the defendant any such statement, or such portion thereof as the court may direct, the court shall strike from the record the testimony of the witness, and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared.

3. The appellant testified at trial. He denied completely any involvement in the first incident. As to the second incident, he admitted transferring a quantity of marihuana to Schafer, but denied selling it to him.

4. *See, e.g., Alexander v. United States,* 336 F.2d 910 (DC Cir.), *cert. denied,* 379 U.S. 935, 85 S.Ct. 336, 13 L.Ed.2d 346 (1964); *United States v. Comulada,* 340 F.2d 449 (2d Cir.), *cert. denied,* 380 U.S. 978, 85 S.Ct. 1343, 14 L.Ed.2d 272 (1965).

question whether surveillance notes fall within the Act. *See, United States v. Bernard*, 623 F.2d 551 (9th Cir. 1979). The notes in the instant case, however, are more than surveillance notes. They represent a factual account of drug transactions made contemporaneously by a party to the transactions. We hold that these notes are statements within the Jencks Act, at least at the time they were orally conveyed to Agent Allen. *See United States v. Carrasco*, 537 F.2d 372 (9th Cir. 1976).

The Government contends, however, that the notes do not qualify under the facts of this case because they were only rough, cryptic writings which Schafer neither signed nor otherwise adopted, as required by subsection (e)(1) of the Act. The notes may be rough and somewhat cryptic, but they are relevant to the identification of the appellant, a crucial issue in this case.[5]

■ We are likewise satisfied that Schafer's notes, albeit not signed, were adopted by him within the meaning of the Act. The question of adoption arises more frequently in connection with notes taken by a Government agent while interviewing a witness. If the witness in such a case neither signed nor adopted the notes, they need not be produced at trial, as a witness generally may not be impeached on somebody else's statement. The notes in the instant case were those of the witness himself who adopted them when he orally related them to Agent Allen. *See United States v. Carrasco, supra.*[6]

■ The Jencks Act provides further that the statement must be "in the possession of the United States." (Subsection (a).) Although Schafer was not detailed as a criminal investigator, he was working for the Government and was not merely a witness. He had operated as an undercover informant for the military police for seven months before he purchased the marihuana from the appellant. These activities made him an agent of the Government and part of its prosecutorial arm. Accordingly, his statement was "in the possession of the United States," as required.[7]

Having so concluded, we must determine whether sanctions should be imposed for the failure to preserve. The difficulty with the loss or destruction of statements, unlike the failure to produce, is that a court generally cannot know with any degree of precision the contents of the statement and its value to the accused. *See, United States v. Miranda*, 526 F.2d 1319 (2d Cir. 1975). For this reason, where "destruction is deliberate, sanctions will normally follow, irrespective of the perpetrator's motivation, unless the Government can bear the heavy burden of demonstrating that no prejudice resulted to the defendant." *United States v. Bufalino*, 576 F.2d 446, 449 (2d Cir. 1978) (footnote deleted).[8]

---

**5.** The cases cited by the Government for a contrary conclusion are distinguishable. *Canaday v. United States*, 354 F.2d 849 (8th Cir. 1966), concerned a statement which contained a list of people interviewed but not the substance of the interview. *United States v. Catalano*, 491 F.2d 268 (2d Cir. 1974), involved surveillance logs which were irrelevant to the testimony of the witness. To qualify, the statement must relate to the "subject matter as to which the witness has testified." 18 U.S.C. § 3500(b).

**6.** In *Carrasco*, the Court held that an informant's diary transferred to a Government agent was a statement within the Act. Although Schafer made an oral rather than a physical delivery of the notes, we hold this to be an adoption contemplated by the Act.

**7.** Read literally, the Jencks Act could be interpreted as being inapplicable to any case where

the notes are no longer in existence on the rationale that the Government cannot "elect" not to produce what is no longer in its possession. To construe the Act so narrowly, however, is self-defeating. As the Ninth Circuit noted in *United States v. Carrasco*, 537 F.2d 372, 377 (9th Cir. 1976):

The Jencks Act is no less violated by the destruction of a statement than by its nonproduction. To hold otherwise would create an exception as broad as the Act itself. The Government, we note, does not contend otherwise.

**8.** The federal courts have differed on the significance of good-faith destruction. *Compare United States v. Vella*, 562 F.2d 275 (3d Cir. 1977), *cert. denied*, 434 U.S. 1074, 98 S.Ct. 1262, 55 L.Ed.2d 779 (1978); *United States v. Bufalino*, 576 F.2d 446 (2d Cir. 1978), *cert. denied*, 439 U.S. 928, 99 S.Ct. 314, 58 L.Ed.2d

In determining whether sanctions should be imposed in this case, we believe that the balancing test adopted by the Court in *United States v. Bryant*, 439 F.2d 642, 653 (D.C.Cir.1971), provides the fairest approach to the problem. In that case, the Court, in returning the case to the lower court directed:

> On remand here the District Court should weigh the degree of negligence or bad faith involved, the importance of the evidence lost, and the evidence of guilt adduced at trial in order to come to a determination that will serve the ends of justice.[9]

On balance, we are satisfied that the appellant was not harmed by the failure of the Government to preserve the informant's notes. The destruction, albeit intentional, was accomplished by a part-time informant and not by a regular law-enforcement official and was not done to "conceal impeaching or exculpatory evidence" from the defense. *United States v. Carrasco*, 537 F.2d at 376. Schafer's motive in destroying the notes—personal safety—from his point of view was eminently reasonable.

Moreover, we are satisfied that even if preserved the notes would have availed the appellant but little. They did not go into any detail concerning the transactions but, as indicated above, related only to the name of the appellant, the time and place of the sales, and the license number of the appellant's van. The informant was able to identify the appellant at trial as the person who sold the marihuana to him. True, the notes provided some impeachment value to the appellant because of the inaccuracies concerning the name of the appellant and the name of the state issuing the license plate. Schafer, however, in his testimony admitted the discrepancies and satisfactorily explained the reason for the mistakes. All in all, the discrepancies were only minimally consequential.

In concluding there was no prejudice, we have not overlooked the Court of Military Appeals decision in *United States v. Jarrie*, 5 M.J. 193 (C.M.A.1978). In that case, the Court held that because the statement was destroyed, it could not invoke the harmless-error rule, presumably in part because of its inability to determine the contents of the statement. The Court distinguished the non-production of a statement where prejudice could be tested by examining the withheld document. *See, United States v. Dixon*, 8 M.J. 149 (CMA 1979). *Cf. United States v. Albo, supra. See also, United States v. Patterson*, 10 M.J. 599 (A.F.C.M.R. 1980), and *United States v. Scott*, 6 M.J. 547 (A.F.C.M.R.1978).

In our view *Jarrie* may be differentiated. Under the facts peculiar to this case, we are able to determine to our satisfaction the contents of Schafer's notes. Initially, we conclude that Schafer was a credible witness in detailing the substance of his notes. He was able to describe them accurately, to include the discrepancies previously noted, as the notes were concise and fragmentary. This is contrasted with *Jarrie* which involved notes made by an agent based on an informant's oral statement covering a drug transaction. It is apparent that the agent's notes in that case were more detailed than Schafer's brief highlights of the transaction. Moreover, *Jarrie* involves due process considerations, as the agent in that case, in making his official report, deleted certain items from the notes, including the names of two eyewitnesses. *Patterson* and *Scott*, which followed *Jarrie*, likewise involved lengthy statements (Article 32 tapes and statements). *But see, United States v. Kilmon*, 10 M.J. 543 (N.C.M.R.1980). *Cf. United States v. Thomas*, 7 M.J. 655 (A.C.M.R. 1979), *affirmed* 11 M.J. 135 (C.M.A.1981).

Nothwithstanding the inconsistencies in Schafer's testimony as well as other evi-

---

321 (1979); and *United States v. Carrasco*, 537 F.2d 372 (9th Cir. 1976). The Jencks Act by its terms does not contain a good-faith exception.

**9.** The Court in *Bryant* emphasized the need for the promulgation of "rigorous and systematic procedures designed to preserve *all* discover-

able evidence gathered in the course of a criminal investigation." 439 F.2d at 652. (Footnote omitted; emphasis in original.) We are in complete agreement. The record in the instant case is silent as to what measures designed to preserve evidence were in effect.

dence adversely affecting his credibility, we are satisfied, considering the record as a whole, that he was a credible witness. Additionally, we are convinced beyond a reasonable doubt that the evidence supports the conviction.

The findings of guilty and the sentence are AFFIRMED.

Senior Judge CARNE concurs.

FOREMAN, Judge, concurring in the result:

I disagree with the majority's conclusion that Schafer's notes were covered by the Jencks Act. I do not believe that Schafer's notes were "in the possession of the United States" within the meaning of the Act. Schafer began working as an unpaid informant after he was apprehended for possession and sale of amphetamines. Thereafter he cooperated with law enforcement authorities "to have the charges reduced" on him. While Schafer may have been an agent of the United States for some purposes, not everything in his possession was necessarily in the possession of the United States. The Jencks Act applies only to materials in the possession of the prosecutorial arm of the United States. The Congressional intent in this regard was made clear when the prior statutory language, which covered statements made "to an agent of the Government" was amended to apply only to statements "in the possession of the United States." *See* Public Law 91–452, October 15, 1970, 84 Stat. 926; *see also United States v. Calley,* 46 C.M.R. 1131, 1191–92 (A.C.M.R.), *affirmed,* 22 U.S.C.M.A. 534, 48 C.M.R. 19 (C.M.A.1973). Because there is no indication in this case that anyone in the prosecutorial arm of the United States had the capability to control Schafer's notes, I conclude that they were not "in the possession of the United States." *See United States v. Goldberg,* 582 F.2d 483 (9th Cir. 1978) (witness's notes not covered by Jencks Act); *United States v. Trevino,* 556 F.2d 1265 (5th Cir. 1977) (document in possession of probation officer not covered); *Beavers v. United States,* 351 F.2d 507 (9th Cir. 1965) (tape recording in the hands of state authorities not covered).

Furthermore, I also do not believe that the notes in question were "statements" within the meaning of the Act. Federal courts have distinguished between interview notes and surveillance notes, holding that the latter are not covered by the Act and need not be preserved. *See United States v. Bernard,* 623 F.2d 551, 557–58 (9th Cir. 1979); *United States v. Lane,* 574 F.2d 1019, 1022 (10th Cir.), *cert. denied,* 439 U.S. 867, 99 S.Ct. 193, 58 L.Ed.2d 177 (1978); *United States v. Calhoun,* 542 F.2d 1094, 1103 (9th Cir. 1976), *cert. denied, sub nom. Stephenson,* 429 U.S. 1064, 97 S.Ct. 792, 50 L.Ed.2d 781 (1977). In my view, the notes in question were more akin to surveillance notes than to interview notes, and as such were not covered by the Jencks Act.

Accordingly, I conclude that the military judge correctly refused to strike Schafer's testimony even though the government was unable to produce his notes. I would affirm on that basis.