**UNITED STATES**

v.

**Senior Airman Julio C. DOUGLAS, FR 548–39–1592, United States Air Force.**

**ACM 27083 (f rev).**

U.S. Air Force Court of Military Review.

Sentence Adjudged 5 May 1988.

Decided 6 Feb. 1991.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair, Captain Mark R. Land and Captain Darla G. Orndorff.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Colonel Robert E. Giovagnoni and Captain Morris D. Davis.

Before BLOMMERS, KASTL, MURDOCK and MILLS, Appellate Military Judges.

## OPINION OF THE COURT

BLOMMERS, Senior Judge:

At trial, the appellant's defense counsel filed several motions, including: (1) a motion to dismiss all charges on the ground that an unnecessary delay in preferral of the charges violated the appellant's right to due process under the Fifth Amendment; and, (2) a motion for appropriate relief requesting a new pretrial investigation and advice (Articles 32 and 34, UCMJ, 10 U.S.C. § 834). Following adverse rulings on these motions, the appellant entered conditional pleas of guilty. R.C.M. 910(a)(2).

Electing a bench trial, the appellant was found guilty in accordance with his pleas of an attempt to wrongfully possess lysergic acid diethylamide (LSD) and of wrongful use and possession of marijuana, in violation of Articles 80 and 112a, UCMJ, 10 U.S.C. §§ 880, 912a. He was sentenced to a bad conduct discharge, eight months confinement, forfeiture of all pay and allowances, and reduction to airman basic (E–1). The convening authority approved the sentence, but subsequently remitted confinement in excess of seven months and nine days.

Upon initial screening of this record, we noted that the convening authority's action purported to order the entire sentence into execution, including the punitive discharge. This exceeded his authority. Article 71(c), UCMJ, 10 U.S.C. § 871(c); R.C.M. 1113(c). Corrective action was taken after the case was returned to the convening authority by Order dated 7 February 1989. R.C.M. 1107(g). This issue has been appropriately resolved.

In addition to inviting our attention to the two defense motions specifically noted above, it is asserted that the military judge erred by denying a motion to strike the testimony of Sergeant Eugene P. Corey because of the Government's failure to comply with the requirements of the Jencks Act. 18 U.S.C. § 3500; R.C.M. 914. We will address the asserted error first.

### Facts

On 25 September 1987, Sergeant (Sgt) Corey was driving Staff Sergeant (SSgt)

Dasher to work at Lajes Field, Azores. At the time, Sgt Corey was assisting the Air Force Office of Special Investigations (OSI) regarding drug activities involving military personnel. As they were driving down the road, Dasher asked Corey to pull off to the side of the road. As they pulled to a stop, an individual subsequently identified as the appellant approached the car on foot. Dasher gave the appellant a foil packet containing marijuana in the hashish form. About two days later, the appellant used part of this hashish by smoking it in a pipe he constructed with aluminum foil.

On 5 October 1987, SSgt Dasher was apprehended by OSI. He provided a statement regarding his drug involvement, and agreed to assist OSI as well. In mid-November 1987, Dasher asked the appellant if he wanted any hashish; the appellant replied that he did not, but that if Dasher "could get acid I'd go for it." Another friend of both Dasher and the appellant, Senior Airman (SrA) Shroyer, was also interested in obtaining illegal drugs. Subsequently, on 21 November, during an official OSI narcotics investigation, agents were able to observe the appellant and Shroyer take possession of what they believed to be lysergic acid diethylamide (LSD) at the base recreation center on Lajes Field. The appellant was apprehended, and a foil-wrapped packet containing a "copy cat" or look-alike substance, which had been provided by OSI, was recovered from his person.

After proper rights advisement, the appellant provided OSI with a sworn, written statement admitting his involvement with illegal drugs as outlined above.

I

R.C.M. 701(a)(2) permits "the defense to inspect," among other things, any papers, documents or other tangible objects within the control of military authorities. As noted above, the Jencks Act has been incorporated into military law by R.C.M. 914. Rule 914(a) provides in pertinent part:

After a witness other than the accused has testified on direct examination, the military judge, on motion of a party who did not call the witness, shall order the party who called the witness to produce, for examination and use by the moving party, any statement of the witness that relates to the subject matter concerning which the witness has testified....

R.C.M. 914(e) sets forth the remedy for the failure to produce any such statement:

If the other party elects not to comply with an order to deliver a statement to the moving party, the military judge shall order that the testimony of the witness be disregarded by the trier of fact and that the trial proceed, or, if it is the trial counsel who elects not to comply, shall declare a mistrial if required in the interest of justice.

The Jencks Act challenge in this case relates to Sgt Corey's testimony regarding his observations of the transfer of hashish between SSgt Dasher and the appellant on 25 September 1987 (charged as wrongful possession of marijuana by the appellant). One of the defense pre-plea motions was to suppress the appellant's confession under Mil.R.Evid. 304(g) due to lack of corroboration. The prosecution called three witnesses to establish corroboration, one of whom was Corey.

Sgt Corey started working for OSI on approximately 10 September 1987, following an incident unrelated to this case. Special Agent (SA) Wendell W. Palmer was made his point of contact. Following the incident involving SSgt Dasher's transfer of marijuana to the appellant on 25 September, Corey called SA Palmer and related what he had observed. Palmer told Corey to write down what he had observed so it could later be incorporated into a formal statement. It is the notes Corey wrote down on a piece of paper that are now missing. Corey testified he could not recall whether he gave the piece of paper to SA Palmer or he kept and lost it himself. He never incorporated the events he witnessed on 25 September into a formal written statement. He does not believe the notes he made on the missing piece of paper offered greater detail than his in-court testimony.

SA Palmer testified that Sgt Corey called him regarding the 25 September incident and related what he had observed. Palmer suggested Corey write out some notes about it. Those notes were never furnished to Palmer, nor to his knowledge to any other OSI agent. Corey did not make a formal written statement concerning the incident. SA Palmer did make a case note about the call in his official report of the on-going investigation, but did not record the substance of what Sgt Corey had related to him. At that time, the focus of the OSI investigation was on SSgt Dasher and SrA Shroyer, not the appellant. As of 25 September, neither Sgt Corey nor the OSI knew the appellant by name.

Both at trial and on appeal, it is argued that since Sgt Corey wrote out a statement at the request of SA Palmer which he then adopted through his in-court testimony, and since at the time Corey, as a confidential informant, was a "government agent," the fact that the statement is missing constitutes a violation of the Jencks Act. As part of his ruling which denied the defense motion to strike Sgt Corey's testimony regarding the 25 September incident, the military judge made the following findings of fact:

> I find that Sergeant Corey did make a written statement. I also find that the statement is not in the possession of the government at the present time. I find that the statement did relate to the events of the 25th of September of 1987 involving the accused.

Those findings are supported by the evidence of record. The military judge concluded that Sgt Corey's written statement was not a statement within the meaning of the Jencks Act for two reasons: (1) the written statement was not "orally conveyed" to SA Palmer (because Corey had reported the incident to Palmer *before* he prepared the statement); and (2) the statement was never in the possession of the United States. He further concluded that even if the statement was covered by the Act, the accused was not prejudiced as the

evidence indicated the information transmitted to SA Palmer, put in the statement, and contained in Sgt Corey's in-court testimony were substantially the same; and, the loss of the statement was inadvertent (no bad faith or intent to hamper the defense was involved).

Both at trial and on appeal, the defense cites *United States v. Bosier*, 12 M.J. 1010 (A.C.M.R.1982), *pet. denied*, 13 M.J. 480 (C.M.A.1982), as authority for the proposition that Sgt Corey's written statement falls within the scope of the Jencks Act, and that failure to produce it should have led to the striking of Corey's testimony. R.C.M. 914(e). In *Bosier*, a confidential informant purchased marijuana from the accused on two occasions. After each transaction, the informant made brief notes about them. Later, he orally related this information to his handling agent. The agent took notes which he later incorporated into an official report. Subsequently, the informant destroyed his notes because he feared his undercover role might be compromised if he retained them. After the informant testified at the accused's trial, the defense moved for production of his notes. The trial judge denied the motion on the ground that the notes were never in the possession of the Government. The informant had been working for the Government for about seven months.

The Army Court found that the notes represented "a factual account of drug transactions made contemporaneously by a party to the transactions. We hold that these notes are statements within the Jencks Act, at least at the time they were orally conveyed to Agent Allen." *Id.* at 1013. The Court further concluded that the statements were "in the possession of the United States," because the informant was not merely a witness but had been working for the Government for a considerable period of time. "These activities made him an agent of the Government and part of its prosecutorial arm." *Id.*[1]

---

**1.** After assessing the factual situation present, the Army Court ultimately concluded that the accused had suffered no prejudice. Therefore,

the sanctions called for by the Act need not be applied. We will make a similar assessment later in this opinion.

Appellate government counsel suggest that the Jencks Act and R.C.M. 914 are inapplicable because Sgt Corey was called during a suppression hearing, not on the merits of the case. Federal precedents are cited in support of this proposition. *See United States v. Blasco,* 702 F.2d 1315 (11th Cir.1983), *cert. denied,* 464 U.S. 914, 104 S.Ct. 275, 276, 78 L.Ed.2d 256 (1983); *United States v. Bernard,* 607 F.2d 1257 (9th Cir.1979); *United States v. Montos,* 421 F.2d 215 (5th Cir.1970); *United States v. Salsedo,* 477 F.Supp. 1235 (E.C.Cal.1979). We are also mindful that this Court has previously opined that a motion *in limine* is not a proper vehicle to raise a Jencks Act issue. *United States v. Barber,* 20 M.J. 678, 679 at n. 2 (A.F.C.M.R.1985), *pet. denied,* 21 M.J. 386 (C.M.A.1985).

We choose not to resolve the present case on this basis. The principal purpose of the Act is to insure the defense has access to material which might impeach a government witness. *Barber,* 20 M.J. at 680. We can envision circumstances where prior statements by a witness could undermine his credibility to such a degree that his in-court testimony would be insufficient to provide the independent evidence needed to corroborate a confession. Should the defense be denied Jencks Act sanctions in any case where the Government chooses not to produce those statements simply because the matter arose during litigation of a motion prior to pleas? *See* R.C.M. 905(b). We leave resolution of that question for another day.

Similarly, we leave for another time the question of whether or not an undercover source instantly becomes an "agent" of the Government *merely by virtue of the time period he/she has been working for the OSI.* In *Bosier,* the period of time involved was seven months; here, the period of time during which Corey had been working as an undercover informant was about two weeks.

We need not address the matter of time because we believe the statement in dispute clearly qualified as a "statement" within the meaning of the Act and R.C.M. 914. Factually, *the data was prepared at the request of SA Palmer,* even though he never incorporated the statement into a formal report. Moreover, at trial, Sgt Corey adopted the statement when he testified that the information recorded was substantially the same as that which he had orally relayed to Palmer. *Bosier,* 12 M.J. at 1013. *See United States v. O'Malley,* 796 F.2d 891, 900 (7th Cir.1986). In any event, upon the facts of this case, the statement was "in the possession of the United States." [2]

We find no prejudice to the appellant as a result of the loss of the statement. The military judge ruled correctly in denying the motion to strike Sgt Corey's testimony. During cross-examination, trial defense counsel asked Sgt Corey: "Chances are that the detail provided in that statement would be greater than what you've provided in your testimony here?" Sgt Corey replied: "No, sir, I don't believe—It was in no greater detail." Sgt Corey's in-court testimony about what he observed on 25 September 1987 is completely consistent with what SA Palmer testified Corey had told him during their telephone call shortly after the incident occurred and prior to Corey's preparation of the written notes about the incident that are now missing. Based upon the record before us, it does not appear that the ability of the defense to cross-examine Sgt Corey was in any way impeded due to the loss of the statement in question. *United States v. Marsh,* 21 M.J. 445, 452 (C.M.A. 1986), *cert. denied,* 479 U.S. 1016, 107 S.Ct. 666, 93 L.Ed.2d 719 (1986); *United States v. Hamilton,* 27 M.J. 628, 630 (A.F.C.M.R. 1988), *pet. denied,* 28 M.J. 164 (C.M.A. 1989), and cases cited. We also agree with the finding of the military judge that there is no evidence of any intent to hamper the defense associated with the loss of the

---

**2.** Needless to say, there is a lesson to be learned from this case. Whenever military law enforcement agents request that an informant prepare written notes regarding an on-going investigation, those notes should be obtained from the informant and included in the investigative case file. Likewise, all informants should be advised of this requirement.

statement. Its loss appears to be purely inadvertent. *United States v. Guthrie,* 25 M.J. 808, 811 (A.C.M.R.1988); *United States v. Strand,* 21 M.J. 912 (N.M.C.M.R. 1986), *pet. denied,* 22 M.J. 367 (C.M.A. 1986); *United States v. Durden,* 14 M.J. 507, 509 (A.F.C.M.R.1982).

Even if Sgt Corey's testimony were to be disregarded, it appears the Government would have had sufficient evidence to corroborate the appellant's confession to the 25 September 1987 possession of marijuana offense. A statement by SSgt Dasher was in evidence before the court. In it, Dasher talked about providing hashish to the appellant in September 1987. The statement also indicates that on 28 September, the appellant had visited Dasher in his dorm room and was complaining about having lost part of the hashish that Dasher had previously provided him. It also appears that SSgt Dasher would have been available as a witness if necessary. Thus, the Government had evidence of corroboration independent of Sgt Corey's testimony. *See* Mil.R.Evid. 304(g)(1).

## II

The motion to dismiss the charges on due process grounds stems from the fact that it took the Government over four months to prefer charges after the appellant's apprehension on 21 November 1987. *See United States v. Johnson,* 17 M.J. 255, 260 (C.M.A. 1984), citing *United States v. MacDonald,* 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982); *United States v. Berrey,* 28 M.J. 714 (N.M.C.M.R.1989). The OSI report of investigation concerning the appellant was completed by mid-December 1987. Trial defense counsel argued that the Staff Judge Advocate's decision to delay preferral of charges was in reality premised upon a desire to conserve processing time (*see* Air Force Regulation 111-1, *Military Jus-*

*tice Guide,* para. 1-4 (30 September 1988)), and that the delay hampered defense preparation for the Article 32 investigation.

Our system certainly encourages the expeditious investigation and processing of court-martial charges. *See* R.C.M. 102(b) and 307(a); Mil.R.Evid. 102; AFR 111-1, paras. 1-4a(1) and 1-4b. Appellate defense counsel invite our attention to two unpublished decisions by this Court expressing displeasure in lengthy pre-preferral delays for *no apparent reason.*[3] We adopt the chronology set forth by appellate government counsel in their reply brief, which is fully supported by the evidence of record:

21 November 1987—appellant apprehended, informant still assisting in other operations.

Late–February 1988—OSI informs SJA that informant's name can be released.

Late–February 1988 to early-March 1988 —SJA goes TDY.

7 to 10 March 1988—SJA drafts charges and contacts CCDC [Chief Circuit Defense Counsel] to arrange legal counsel for accused, SSgt Dasher and SrA Shroyer. CCDC advises week of 10 April 1988 is first available date for counsel [who will be traveling to the Azores]. SJA and CCDC agree to conduct Art. 32's that week for mutual administrative convenience.

(Lajes Field is an isolated location approximately 2000 miles from CONUS [continental United States]. Transportation is limited.)

(Record and document citations omitted.)

Another aspect of the due process violation raised at trial involved command action placing the appellant in a substance abuse rehabilitation program during the early part of 1988. Such action is provided for by Air Force regulation. AFR 30-2, *Social Actions Program,* Chap. 4 (18 April 1986).[4] Participating in the same counseling group

---

3. *United States v. Rodriguez,* ACM 27134 (1 November 1988) (approximately eight months of inaction between last offense and preferral); *United States v. Summers,* ACM S27763 (14 July 1988) (ten months of inaction between offense and preferral). Copies of these decisions were not attached to the defense brief as required by our Internal Rules, Rule 9-4 (1 July 1988).

4. Substance abuse records and information are treated with confidentiality, and normally may not be introduced against a member at a trial by court-martial. AFR 30-2, para. 3-32; AFR 111-1, para. 13-5.

as the appellant were two of the potential witnesses against him, SSgt Dasher and SrA Shroyer. Trial defense counsel argued that this materially affected the appellant's right to raise an entrapment defense because he was required to discuss his drug involvement in the presence of those two individuals.

SSgt Dasher testified that during these rehabilitation sessions he did learn information about the appellant's drug involvement that he had not previously known. He was working for OSI at the time and reported that information to SA Palmer. SA Palmer testified that SSgt Dasher was acting as an informant during the period February through April 1988. He recalled only one conversation with Dasher regarding the drug rehabilitation program. The substance of the conversation dealt with Dasher's concern as to whether he could reveal his association with OSI to the counselors. He did not relay any information about the appellant's involvement with drugs to SA Palmer. Additionally, trial counsel advised the military judge:

> The United States is not aware of any evidence that came from any involvement by the accused at a drug rehab program as provided by AFR 30–2 and precluded not only by that regulation but AFR 111–1. To the understanding of the United States no levies were placed on any participant of that seminar group to seek to obtain nor did any information come to the attention of authorities based on the accused's participation in the drug rehab program.

■ We find no due process violation. There was no form of pretrial restraint in this case as defined in R.C.M. 304(a).[5] *See United States v. Rachels*, 6 M.J. 232, 235 (C.M.A.1979); *United States v. Patterson*, 25 M.J. 650 (A.F.C.M.R.1987), and cases cited (test for due process violation). Un-

der the circumstances, the Staff Judge Advocate's decision to delay preferral of the charges was entirely reasonable. Public officials have broad discretion in making decisions as to when to prosecute. *United States v. Hagen*, 25 M.J. 78, 84 (C.M.A. 1987); *see also United States v. Hodge*, 26 M.J. 596 (A.C.M.R.1988), *aff'd*, 29 M.J. 304 (C.M.A.1989). We find no abuse of discretion here. There was no defense request for delay in conducting the Article 32 investigation, nor any assertion at the hearing that the defense was not prepared.[6] *Cf. United States v. Miro*, 22 M.J. 509 (A.F.C. M.R.1986). Finally, we are satisfied that no privileged information obtained as a result of the appellant's participation in the drug rehabilitation program reached the Government's prosecutorial arm, nor was there any intent to ferret out such information through SSgt Dasher or SrA Shroyer. *Cf. United States v. Oldham*, 24 M.J. 662 (A.F.C.M.R.1987).

### III

The motion for a new Article 32 investigation and pretrial advice was premised upon the fact that both SSgt Dasher and SrA Shroyer had invoked their right against self-incrimination at the hearing and refused to testify, leaving only their prior written statements for the investigating officer to consider. The convening authority declined to give either of those witnesses testimonial immunity at that time. *See* R.C.M. 704. It was argued that this deprived the appellant of a full and impartial hearing. R.C.M. 405(a).

As noted above, trial defense counsel indicated that the defense of entrapment would be raised. This related principally to the charge of attempted possession of LSD. SSgt Dasher was available to testify at trial, and defense counsel acknowledged

---

5. The appellant was denied off-island leave on two occasions pending disposition of the charges under investigation, and, as discussed, was placed into a drug rehabilitation program. Neither of these actions were sufficient to start the Government's clock. *See United States v. Facey*, 26 M.J. 421 (C.M.A.1988); *United States v. Bradford*, 25 M.J. 181 (C.M.A.1987); R.C.M. 707(a)(2).

6. The fact that two government witnesses were deemed unavailable to testify at the pretrial investigation, thereby depriving the defense the opportunity to cross-examine them at that time is addressed in Part III of this opinion.

that he had received adequate discovery upon which to prepare for cross-examination. He had already had a short interview with Dasher. Neither counsel had yet talked with SrA Shroyer. A request for immunity for Shroyer was pending before the convening authority and trial counsel advised the court that "it is fully anticipated that he will be granted immunity."

The written statements of SSgt Dasher and SrA Shroyer, as well as the testimony of SA Palmer at the Article 32 hearing, contained information from which one could easily conclude that entrapment was likely to become an issue at trial. The investigating officer discussed this matter in detail in his report. Moreover, defense counsel submitted a four-page memorandum of law addressing the entrapment and immunity issues which appears as an exhibit to the investigating officer's report. The investigating officer also had before him an inculpatory signed, sworn statement by the appellant admitting his involvement in the use and possession of marijuana and the attempt to possess LSD (referred to in the statement as "acid").

■ The Discussion section under R.C.M. 405(a) pertaining to pretrial investigations states in part:

The primary purpose of the investigation required by Article 32 and this rule is to inquire into the truth of the matters set forth in the charges, the form of the charges, and to secure information on which to determine what disposition should be made of the case. The investigation also serves as a means of discovery.

We are convinced these purposes were achieved in this case, and that the convening authority had before him sufficient evidence upon which to make an informed decision with regard to the disposition of the charges. R.C.M. 407. *See United States v. Foti*, 12 U.S.C.M.A. 303, 30 C.M.R. 303, 304 (1961); *United States v. Clements*, 12 M.J. 842, 845 (A.C.M.R.1982), *pet. denied*, 13 M.J. 232 (C.M.A.1982).

■ We are equally satisfied that the investigating officer and the convening authority could properly rely upon the written, sworn statements of SSgt Dasher and

SrA Shroyer in that they were "not reasonably available" as witnesses within the meaning of R.C.M. 405(g)(1)(A) and 804(a)(1). *United States v. Matthews*, 16 M.J. 354, 362 (C.M.A.1983); *United States v. Dagenais*, 15 M.J. 1018, 1019–1020 (A.F. C.M.R.1983), *pet. denied*, 17 M.J. 61 (C.M. A.1983); *United States v. Capel*, 15 M.J. 537 (A.F.C.M.R.1982); *United States v. Webster*, 1 M.J. 496 (A.F.C.M.R.1975).

■ Finally, we find no abuse of discretion by the convening authority in denying the defense request for immunity for these two witnesses at the Article 32 stage of this proceeding. *Hagen*, 25 M.J. 78; *United States v. Villines*, 13 M.J. 46, 54 (C.M.A. 1982); R.C.M. 704(e). *See also United States v. Lucas*, 25 M.J. 9 (C.M.A.1987), *cert. denied*, 484 U.S. 1027, 108 S.Ct. 752, 98 L.Ed.2d 764 (1988).

The findings of guilty and the sentence are correct in law and fact. *United States v. Fisher*, 24 M.J. 358, 361 (C.M.A.1987); *United States v. Vanzandt*, 14 M.J. 332 (C.M.A.1982); R.C.M. 703(f) and 1001(e)(2). Accordingly, upon the basis of the entire record, they are

AFFIRMED.

Senior Judges KASTL and MURDOCK and Judge MILLS concur.

Senior Judge BLOMMERS authored this opinion prior to his reassignment.