**UNITED STATES**

v.

**Herbert C. BOYD, Jr., 148 52 5918, Sergeant (E–5), U. S. Marine Corps.**

**NMCM 82 0535.**

U. S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 7 Aug. 1981.

Decided 25 Aug. 1982.

LT Stephen R. Cochell, JAGC, USNR, Appellate Defense Counsel.

LCDR W. A. Dorsey, JAGC, USNR, Appellate Government Counsel.

LT Wm. Eric Minamyer, JAGC, USNR, Appellate Government Counsel.

Before CEDARBURG, C. J., and GORMLEY and MAY, JJ.

GORMLEY, Judge:

Appellant was tried by general court-martial, comprised of officer and enlisted members, on 30 July, 4, 5, and 6 August 1981 for violating Articles 121 and 130, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 921 and 930. Contrary to his pleas, appellant was found guilty of larceny of United States currency of a value greater than $100.00, the property of the United States Government, and unlawful entry into the Enlisted Men's Club, Camp Schwab, Okinawa, with intent to commit larceny therein. Appellant was sentenced to be reduced to the lowest enlisted pay grade (E–1); to forfeit $200.00 pay per month for 12 months; to pay a fine of $400.00 to the United States, and to be further confined at hard labor until said fine is so paid, but for not more than 1 year; to be confined at hard labor for 1 year; and to be discharged from the naval service with a bad-conduct discharge. The convening authority approved only so much of the sentence as provided for a bad-conduct discharge; confinement at hard labor for 1 year; forfeiture of $200.00 pay per month for 12 months; and reduction to the lowest enlisted pay grade (E–1).

Appellant posits three assignments of error for consideration by this Court. We shall address them in the order of presentment.

I

THE MILITARY JUDGE ERRED IN FAILING TO SUPPRESS THE WITNESS TESTIMONY OF LCPL [R] BECAUSE OF THE GOVERNMENT'S FAILURE TO COMPLY WITH THE JENCKS ACT, 18 U.S.C. § 3500.

In the early morning hours of 2 January 1981 a break-in of the Camp Schwab Enlisted Men's Club was discovered. Lance Corporal [R] had guard duty that morning and testified that he had seen the appellant on three occasions at the Enlisted Men's Club during his patrols, and had queried him as to what he was doing, to which appellant responded that he was waiting for a package, and after walking away, turned around and offered to cut Lance Corporal [R] in "on the deal" if he would not say anything. Lance Corporal [R] agreed so that he could determine what appellant was up to. Appellant was then observed removing putty from a window in the Club. Lance Corporal [R] then proceeded to the snack bar where he telephoned the reactionary force, having decided not to use his radio for fear that static from it would have alerted appellant as to what he was doing. Four members of the reactionary force arrived approximately 15 minutes later, surveyed the scene, and observed the open window of the Club. Military police and two Naval Investigative Service (NIS) agents were also on the scene.

Lance Corporal [R] made a holographic statement sometime before 0800, on the 2nd of January 1981, inside the Enlisted Men's Club, at the behest of either someone from the NIS or a military policeman. He gave the written statement to whomever had requested it, but could not recall which individual that was. Approximately 10 minutes after the holographic statement was completed, Lance Corporal [R], at the request of NIS agents related information about the incident to them which they in turn reduced to a typed statement. The NIS agents testified that they had neither requested nor received a holographic statement from Lance Corporal [R], and one agent further testified that they had examined the military police files and found no holographic statement from Lance Corporal [R] concerning the appellant's case in that file. That missing document is the basis for the allegation that the Jencks Act was violated, and that, therefore, the testimony of the originator should have been suppressed. It is uncontested that Lance Corporal [R]

had provided a written statement to someone, and that statement was lost if not destroyed.

■ Under the terms of the Jencks Act, after a Government witness testifies on direct examination, the defense is entitled to the production of documents which are: (1) statements of the witness as defined by the statute; (2) in the possession of the Government; and (3) related to the subject matter of the witness' testimony. It is clear the Act applies to courts-martial. *United States v. Heinel,* 9 U.S.C.M.A. 259, 26 C.M.R. 39 (1958).

In denying the defense motion to suppress the testimony of Lance Corporal [R] on the basis that the Jencks Act had been violated, the military judge made special findings which included, *inter alia,* that he was convinced that Lance Corporal [R] had in fact made a handwritten statement but that he was not convinced that it had come into the possession of a Government representative. He then rationalized in the alternative that if he were wrong in concluding that Lance Corporal [R's] handwritten statement did not come into the hands of a Government representative soon after it was written, that the content of the handwritten statement was substantially the same as the content of the typed statement signed by him after his initial interview with NIS Special Agent [J], that the destruction of the statement was in good faith, that the destruction occurred soon after the statement was written, that the defense was not prejudiced by the destruction of the statement, and that, in light of all circumstances, it would be a travesty of justice to exclude Lance Corporal [R's] testimony on the basis that such action was required by the Jencks Act.

■ We cannot subscribe to the military judge's finding that Lance Corporal [R's] statement did not come into "the possession of the Government." It is inconceivable that Lance Corporal [R], of his own volition decided to produce a narrative of what transpired. The obvious conclusion then is that either the NIS agents or CID agents had requested the writing. The NIS agents testified that they had not made the request, leaving then the CID agents as the parties who must have requested the statement. The Court in *United States v. Dansker,* 537 F.2d 40, 61 (3rd Cir. 1976), stated, "In speaking of statements 'in the possession of the United States', we understand the statute to require production only of statements possessed by the prosecutorial arm of the federal government." Were the CID agents attached to the prosecutorial arm of the Government? We hold they were—to hold otherwise would be ludicrous. Their assigned military duties were police and investigatory functions and were a natural and ancillary part of the "prosecutorial role". Applying the foregoing rationale to Lance Corporal [R's] holographic statement, we come to the ineluctable conclusion that it fell squarely within the terms of the Jencks Act.

■ Our analysis must necessarily turn to the legal implications attendant upon violations of the Jencks Act. Not every Jencks Act error is prejudicial or requires a remedy. *Rosenberg v. United States,* 360 U.S. 367, 79 S.Ct. 1231, 3 L.Ed.2d 1304 (1959); *United States v. Dixon,* 8 M.J. 149 (CMA 1979). While the Government has an obligation to provide otherwise disclosable evidentiary material in its possession, noncompliance does not require in all cases that a new trial be ordered or that testimony be stricken. *United States v. Pope,* 574 F.2d 320 (6th Cir. 1978). Rather, implementation of the Act "must be entrusted to the 'good sense and experience' of the trial judge subject to 'appropriately limited review of appellate courts.' " *United States v. Augenblick,* 393 U.S. 348, 355, 89 S.Ct. 528, 533, 21 L.Ed.2d 537 (1969). The imposition of sanctions for violations of the Jencks Act should turn on the particular circumstances of the case at bar and on a balancing of the potential prejudice to the accused and the Government's culpability. *United States v. Arra,* 630 F.2d 836 (1st Cir. 1980); *United States v. Miranda,* 526 F.2d 1319 (2d Cir. 1975); *United States v. Bryant,* 439 F.2d 642 (D.C. Cir. 1971).

In moving from a *per se* standard which would require a remedy for all Jencks Act

errors, courts have chosen to consider the Government misconduct in the context of the entire case. Thus, the United States Supreme Court has implied that a new trial would not be appropriate where the information contained in the missing statement was made available to the defense in another form. *Killian v. United States,* 368 U.S. 231, 82 S.Ct. 302, 7 L.Ed.2d 256 (1961). Under those circumstances, "it would offend common sense and the fair administration of justice to order a new trial." *Killian, supra* at 243, 82 S.Ct. at 309. *See also United States v. Jiminez,* 484 F.2d 91 (5th Cir. 1973); *Ogden v. United States,* 323 F.2d 818 (9th Cir. 1963). Similarly, sanctions have been withheld where tapes requested by the defense disappeared, despite concerted Government efforts to produce the statements at trial. Absent some indication that the prosecution had deliberately suppressed the evidence, the judicially recognized exception for "good faith" violations was not precluded. *Augenblick, supra. See also United States v. Perry,* 471 F.2d 1057 (D.C. Cir. 1972).

Recently, the Army Court of Military Review has adopted the prevailing balancing analysis, in noting the need

> [to] weigh the degree of negligence or bad faith involved, the importance of the evidence lost, and the evidence of guilt adduced at trial in order to come to a determination that will serve the interests of justice.

*United States v. Bosier,* 12 M.J. 1010 (A.C. M.R.1982). *See also United States v. Ali,* 12 M.J. 1018 (A.C.M.R.1982). In adopting the more flexible standard advanced by the Army Court and our civilian counterparts, we feel it appropriate to move from the narrower reasoning reflected in *United States v. Kilmon,* 10 M.J. 543 (N.C.M.R. 1980).

█ Under the facts of this case, we are able to establish satisfactorily the contents of Lance Corporal [R's] original holographic statement. After Lance Corporal [R] testified in the Government's case-in-chief, he was cross-examined vigorously and extensively concerning the major discrepancy in his testimony and the statement he had given to NIS investigators regarding the description of appellant's irregular lip configuration. Lance Corporal [R] testified that he had observed appellant on three different occasions on the evening of the incident, and this one minor variance regarding a facial peculiarity did not render his testimony substantially different from his extant typewritten statement. There is no showing that the original holographic statement was either lost or destroyed purposefully or negligently with any bad faith or sinister motive. We are then left with a typewritten statement signed by Lance Corporal [R], made virtually contemporaneously with the original missing holographic statement, and made available to appellant. Considering the record as a whole we are convinced that through credible testimony the substantially identical content of the two statements was established, resulting in no impeachment value to the original holographic statement. In this respect, the instant case is distinguishable from the perceived due process violations in *United States v. Jarrie,* 5 M.J. 193 (C.M.A.1978). We find neither the long time lapse between the various statements involved nor the unavailability of a potentially exculpatory witness which concerned the Court of Military Appeals in the *Jarrie* case. Absent these highly prejudicial circumstances, we consider the extreme remedy justifiably applied in *Jarrie* to be inappropriate in the present case. Accordingly, we find that there was no prejudice to appellant because of this Jencks Act error. This assignment of error is without merit.

## II

THE MILITARY JUDGE ERRED IN HIS DENIAL OF THE DEFENSE MOTION TO SUPPRESS SPECIAL AGENT [D's] TESTIMONY BECAUSE OF THE GOVERNMENT'S FAILURE TO COMPLY WITH THE JENCKS ACT, 18 U.S.C. § 3500. *SEE,* ASSIGNMENT OF ERROR I; RESPONSE OF INDIVIDUAL MILITARY COUNSEL TO THE STAFF JUDGE ADVOCATE REVIEW.

█ At trial the Government counsel carefully limited the testimony of Special

Agent [D] to matters that were the subject of documents then in existence, specifically to his interrogation of appellant, the consent search of his barracks living area, and the items of evidence seized therefrom. The original notes of the interrogation by Special Agent [D] were incorporated in his report of investigation and there was no showing that these notes were deliberately destroyed after prosecution was contemplated or that they were in any way substantially different from the formal report. The only portion of the testimony of Special Agent [D] which related to the notes were questions pertaining to the appellant's denial of any participation in the Club break-in. That denial was part of the formal report. It is firmly established that a criminal investigator's notes and reports are subject to production under the Jencks Act. *United States v. Bell,* 457 F.2d 1231 (5th Cir. 1972); *Lewis v. United States,* 340 F.2d 678 (8th Cir. 1965); and *United States v. Dixon, supra.* Having determined the issue of producibility, it is necessary to determine if a witness' testimony bears directly on the substance of the notes. *United States v. Blackburn,* 446 F.2d 1089 (5th Cir. 1971). There the military judge determined, based upon the direct testimony of Special Agent [D] that his testimony did not relate to the notes. We, likewise, arrive at this same determination and consider the destruction of the notes, albeit a technical violation of the Jencks Act, in no way prejudiced the appellant in his ability to seek to impeach the witness. We find this assignment of error to be devoid of merit.

## III

APPELLANT WAS DENIED A SPEEDY TRIAL. *SEE UNITED STATES V. HAGLER,* 7 M.J. 944, 947 (N.C.M.R. 1979); ARTICLE 30(b), UCMJ, 10 U.S.C. § 830(b), PARAGRAPHS 68*i* AND 215*e*, MCM, 1969 (REV.), APPELLATE EXHIBIT IV, NOTICE OF MOTIONS AT 1.

Charges in this case were preferred on 1 April 1981 and trial commenced on 30 July 1981, the intervening time equating to 120 days. Reviewing all of the circumstances attendant upon this delay, we find no oppressive design on the part of the Government and no articulable prejudice to the appellant, save perhaps the anxiety generated within anyone facing a court proceeding. The Government proceeded with reasonable dispatch, the appellant made no demand for speedy trial, and the delay was not inordinate. The claim of a denial of speedy trial is without merit.

We are, furthermore, convinced beyond a reasonable doubt that the evidence supports the conviction.

The findings and sentence, as approved on review below, are affirmed.

Judge MAY concurs.

CEDARBURG, Chief Judge (concurring):

I write to specifically record my concurrence in the rationale of our application of a less restrictive standard for admissibility where there has been a departure from the requirements of the Jencks Act than that which was applied under the facts presented in *United States v. Kilmon, supra,* a decision in which I was a participating judge.