**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Lewis Arnold McCOY,
Defendant–Appellant.**

No. 87–3754.

United States Court of Appeals,
Sixth Circuit.

Argued April 6, 1988.

Decided June 10, 1988.

Hal R. Arenstein (argued), Cincinnati, Ohio, for defendant-appellant.

Robert Behlen (argued), Asst. U.S. Atty., Cincinnati, Ohio, for plaintiff-appellee.

Before MARTIN, WELLFORD and NELSON, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

Lewis Arnold McCoy appeals his jury conviction for bank robbery in violation of 18 U.S.C. § 2113(a). McCoy argues, among other things, that his defense was unfairly prejudiced by the admission into evidence of photographs taken at a lineup. While we believe that the district court improperly overruled McCoy's objection, we hold that this error was harmless. Therefore, we affirm.

On April 2, 1987, McCoy was indicted by a federal grand jury on three counts of bank robbery. The first count charged McCoy with the armed robbery of a bank in Middletown, Ohio on November 7, 1986. The second count charged McCoy with the unarmed robbery of the Forest Park, Ohio branch of the Central Trust Company on December 22, 1986. The third count charged him with the unarmed robbery of the same Forest Park bank on February 25, 1987.

McCoy asked the district court to conduct separate trials on each of the three counts. The court granted McCoy's motion in part and denied it in part. The district court ordered that the third count be tried separately because McCoy intended to offer an alibi defense to that charge, but the court ruled that the first and second counts were of the same or similar character and should be tried jointly. At the first trial, McCoy was acquitted of the February 1987 robbery charged in the third count. Following a subsequent trial, a jury adquitted McCoy of the November 1986 robbery charged in the first count, but the jury convicted him of the December 1986 robbery charged in the second count. McCoy now appeals that conviction.

First, McCoy claims that the district court's refusal to conduct separate trials on the first and second counts of the indictment compromised his right to a fair trial on the alleged offenses. McCoy contends that the joint trial prejudiced his defense because the jury may have viewed the evidence cumulatively, or because the jury may have improperly used evidence pertaining to one charge to infer that he was inclined to have committed the other crime. We are not persuaded.

Under Fed.R.Crim.P. 8(a), two or more offenses may be charged in the same indictment if the offenses "are of the same or similar character." Rule 14, however, authorizes the district court to order separate trials if it appears that the defendant or the government is prejudiced by a joinder of offenses. "A motion for severance pursuant to Rule 14 is committed to the sound discretion of the trial court." *United States v. Wirsing*, 719 F.2d 859, 864 (6th Cir.1983). We believe the district court did not abuse its discretion when it denied McCoy's motion to have the first and second counts tried separately. McCoy has failed to cite specific instances where the joint trial may have prejudiced his defense. His general allegations are clearly not suf-

ficient to outweigh the public's interest in avoiding multiple litigation.

McCoy next claims that his rights under the fourteenth amendment were violated. He argues that the prosecuting attorney unconstitutionally exercised a peremptory challenge to excuse a potential juror solely on the basis of race.

In *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court held that purposeful racial discrimination in the selection of a jury violates a defendant's right to equal protection. In order to establish a prima facie case, the defendant must prove three things: 1) that the defendant is a member of a cognizable racial group; 2) that the prosecutor has exercised peremptory challenges against members of the defendant's race; and 3) that the relevant circumstances raise an inference of purposeful discrimination. If the defendant can make out a prima facie case, the prosecutor must then present a neutral explanation for having excluded the jurors.

During voir dire, the prosecuting attorney excused a prospective juror who was black. At a sidebar conference, McCoy's attorney contested this challenge, arguing that this woman was being dismissed solely because she was a member of the same racial group as McCoy. The prosecuting attorney responded that she was being dismissed because she was unemployed.

■ The record substantiates the prosecuting attorney's neutral explanation. The United States exercised two peremptory challenges. The prosecution challenged a young black woman and a young white man. Both prospective jurors, though, were unemployed. McCoy was also young and unemployed, and the prosecution believed that these two individuals might improperly sympathize with McCoy. Although three white jurors who were not challenged also did not work, the prosecution could reasonably assume that they, a 63-year-old male, a 62-year-old male, and a 41-year-old married female, would not excessively sympathize with McCoy. Moreover, two blacks who were employed did serve on the jury.

McCoy also claims that he was denied a fair trial when photographs of a lineup were admitted into evidence. During the trial, the prosecuting attorney elicited testimony from several witnesses concerning a lineup. Although McCoy did not challenge the fairness of the lineup, the prosecution offered the photographs as evidence in order to show that the lineup was not improperly suggestive. McCoy argues that, because he and the other individuals were dressed in "prison garb," the photographs suggest that he was incarcerated and their admission unfairly prejudiced his defense. McCoy compares this situation to the admission of "mug" shots, a practice which "has been strongly condemned ... as effectively eliminating the presumption of innocence and replacing it with an unmistakable badge of criminality." *Eberhardt v. Bordenkircher,* 605 F.2d 275, 280 (6th Cir. 1979). McCoy's attorney advanced this argument at trial, but the district court overruled his objection.

Fed.R.Evid. 403 provides that evidence, though relevant, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." The advisory notes which follow this rule define "unfair prejudice" as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."

■ Applying this balancing test to the facts of this case, we believe the district court erred when it overruled McCoy's objection to the admission of the lineup photographs. Such photographs are potentially prejudicial. They show the defendant and five other individuals wearing identical, institutional uniforms. Although the men look as if they could be answering a casting call for the role of a thug in a television police drama, their unhappy faces indicate that they are not there voluntarily. Moreover, clearly evident between two of the men is a sign which reads "Cincinnati Police Department," and behind them are lines which enable a viewer to estimate their relative heights. These photographs suggest that McCoy is a "bad guy" who

belongs in jail. A typical juror could thereby be influenced irrationally to conclude that he is guilty of the offense charged. And this unfair prejudice is more likely where, as here, the prosecutor presented very little other tangible evidence because the visual impact of a photograph is almost certainly more significant than the impression left by oral testimony.

In contrast, this photographic evidence had no probative value. At the trial, the prosecutor claimed that the photographs were being offered to show that the lineup was not unduly suggestive. McCoy's attorney, however, argued that he had not challenged the fairness of the lineup. Therefore, the district court should have sustained McCoy's objection to the admission of the photographs. If the court were worried that McCoy's attorney would subsequently suggest that the lineup was unfair, the court could have made its ruling subject to the condition that McCoy's attorney not raise the issue with subsequent witnesses or in his closing remarks to the jury.

■ Had McCoy claimed that the lineup was not fair, however, the balance would have tipped in favor of admitting the photographs. In that case, admission of the photographs would have been necessary to bolster a crucial element of the prosecution's case: the eyewitness identification of the defendant. On the other side of the balance is the prejudice potentially produced by the lineup photographs. This potential prejudice is not as substantial as the prejudice caused by the admission of mug shots. "Mug shot evidence is prejudicial because it informs the jury that a defendant has a criminal record." *Murray v. Superintendent, Kentucky State Penitentiary,* 651 F.2d 451, 454 (6th Cir.1981). Here, the potential prejudice is less palpable because conveying the impression that the defendant may be a "bad guy" is not as prejudicial as revealing that the defendant has previously been convicted of a crime. Therefore, where the defendant has challenged a lineup as unduly suggestive, a trial court may admit lineup photographs. The court, though, should provide a limiting instruction which includes at least the

following three elements: 1) an explanation as to why the individuals in the photograph are dressed uniformly; 2) an instruction that the photograph is only being offered to refute the claim that the lineup was unfairly suggestive: and 3) an instruction that jurors should not infer from this photograph that the defendant has a criminal record.

We believe, however, that the district court's error in this case was harmless. "An error, not of constitutional dimension, is harmless unless it is more probable than not that the error materially affected the verdict." *United States v. Neuroth,* 809 F.2d 339, 342 (6th Cir.) (en banc), *cert. denied,* — U.S. —, 107 S.Ct. 3190, 96 L.Ed.2d 678 (1987). The photographs which were erroneously admitted related to the bank robbery charged in the first count. McCoy was acquitted of that charge. · With respect to the second count, though, the prosecution produced ample evidence of McCoy's guilt. Among other things, the record reveals that he was positively identified by two bank tellers and, during the robbery, his picture was taken by the bank's surveillance camera. Therefore, it is unlikely the error materially affected the jury's decision to convict McCoy for the December 1986 bank robbery.

■ For this same reason, McCoy's claim that there is insufficient evidence to support that conviction is without merit. We must sustain the jury verdict if it is supported by substantial evidence. As stated above, we believe there is ample evidence in the record to support McCoy's conviction.

■ McCoy's Jencks Act argument also fails. McCoy claims that the prosecution violated the Jencks Act, 18 U.S.C. § 3500(b), by failing to provide him with a witness' prior written statement. This statute requires that, after a witness called by the United States has testified on direct examination, on defendant's motion, the trial court must order the government to produce any statement of that witness which it has in its possession. The record clearly shows that the government made several attempts to locate the statement but was

not able to find it. After being advised of these efforts, McCoy's attorney said he was satisfied that the government had done all it could to locate the document. McCoy has not suggested that these efforts were not made in good faith, and he has not offered any evidence that the government deliberately destroyed the document. Therefore, the government fully met its obligations under the law.

Accordingly, McCoy's conviction is hereby affirmed.

DAVID A. NELSON, Circuit Judge, concurring.

Although I concur in the judgment and in much of the court's opinion, I disagree with the suggestion that the district court abused its discretion in overruling defendant McCoy's objection to the admission into evidence of the photographs taken at the lineup where Mr. McCoy was identified (as he was by witnesses named Busby and Rodenberg) as the man who committed the bank robbery at Middletown on November 7, 1986, and as the man who committed the Forest Park robbery on December 22, 1986.

It was Mrs. Rodenberg who identified defendant McCoy as the man who committed the December robbery in Forest Park, and Mrs. Rodenberg's identification was unquestionably a crucial element of the case on which Mr. McCoy was convicted. Mr. McCoy may not have challenged the fairness of the lineup, but he certainly challenged the accuracy of Mrs. Rodenberg's identification. In assessing that challenge and in evaluating Mrs. Rodenberg's identification evidence, it seems to me, the jury might very well have been aided by photographs depicting what Mrs. Rodenberg saw at the lineup. Her testimony in this connection was as follows:

"Q. Now Mrs. Rodenberg, did you have an opportunity to see a lineup in connection with this case?

A. Yes, I did.

Q. And did anyone tell you which individual you should select at the lineup?

A. No.

Q. Was there anything about the lineup which suggested to you who you should pick?

A. No.

Q. Now, did you recognize anyone at the lineup?

A. Yes.

Q. Who did you recognize?

A. I recognized the man at my window here.

Q. That's the robber?

A. That's the robber.

Q. Now, how quickly did you recognize him at the lineup?

A. As soon as he came in I knew it was him.

Q. How did you feel when you saw him at the lineup?

A. I felt sick to my stomach.

THE COURT: I'm sorry?

A. Sick to my stomach.

Q. At this time, I would ask the clerk to hand the witness exhibits 11, 11A, and 11B. Now, could you tell us what exhibit 11 is?

A. It's the picture of a lineup.

Q. And which man did you select?

A. Number three.

Q. Now, would you recognize this man if you saw him again?

A. Yes, I would.

Q. Would you please look around the courtroom and tell us if he is here today?

A. Yes, he's sitting right over there."

The extent to which the lineup photographs may have supported (or, for that matter, detracted from) Mrs. Rodenberg's testimony that there was nothing about the lineup that suggested whom she ought to pick was something that the jury could determine only from the photographs themselves. Clearly, it seems to me, the photographs constituted "relevant evidence" within the meaning of Rule 401, Fed.R. Evid. (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.")

The district court evidently thought that the probative value of the evidence in question was not "substantially outweighed by the danger of unfair prejudice," as those words are used in Rule 403, and I see no basis for concluding that the district court abused its discretion in its weighing of probative value, on the one hand, against any danger of unfair prejudice on the other.

The danger of unfair prejudice seems minimal at best. When I examined the photographs of the lineup I could not tell, from the expressions on their faces, whether the participants were actual prisoners, or mere detainees, or off-duty policemen pressed into service when they wanted to be elsewhere, or assistant prosecutors whom victory had eluded, or unemployed actors trying to absorb the flavor of a real police station. Their facial expressions no more indicated to me that all of the participants were in durance vile than did the fact that a sign in the background confirmed that the lineup took place where the jury would doubtless have assumed it took place even if witness Busby had not explicitly testified—as she did testify—that the lineup was conducted "over at the Justice Center down here in Cincinnati."

Even if there was some slight potential for "unfair" prejudice, and even if it outweighed the probative value of the photographs, I could not say that the district court abused its discretion in concluding that the danger of unfair prejudice did not outweigh the probative value of the evidence "substantially." And "substantially," it will be recalled, is what Rule 403 requires.

I agree, finally, that there may be something to be said for a limiting instruction explaining why the photographs were being offered, explaining why all of the individuals depicted were wearing the same type of smock, and cautioning the jurors not to infer from the photographs that the defendant had a criminal record. Such an instruction, however, should only be given on request; I think it would have been improper for the court to caution the jury along these lines *without* having been asked to do so by the defendant. It is far from obvious that the question of a criminal record would even occur to a jury, without the court's mentioning it, and the risk entailed in such an instruction is not something with which the defendant ought to be saddled unless his attorney requests it. The attorney made no such request in this case.