**UNITED STATES**

v.

**Victor L. ROXAS, 567–79–9823, Mess Management Specialist Chief (E–7), U.S. Navy.**

**NMCM 93 01605.**

U.S. Navy–Marine Corps
Court of Criminal Appeals.

Sentence Adjudged 14 April 1993.

Decided 13 Dec. 1994.

LT Kent Tester, JAGC, USNR, Appellate Defense Counsel.

Maj Laura L. Scudder, USMC, Appellate Government Counsel.

Before MOLLISON, Senior Judge, and CLARK and DeCICCO, JJ.

DeCICCO, Judge:

A general court-martial composed of officer members convicted the appellant, contrary to his pleas, of attempted forcible sodomy in violation of Article 80, Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 880. The court sentenced the appellant to confine-

ment for 1 year, forfeiture of all pay and allowances, reduction to pay grade E–1, and a bad-conduct discharge. The convening authority approved the sentence. The appellant has raised three assignments of error before this Court.[1]

The principal issue in this case is whether the military judge erred in denying a defense request to strike the testimony of a witness because the witness' pretrial handwritten statement of events was not produced by the Government as required by the Jencks Act, 18 U.S.C. § 3500. We hold that the military judge did not err under the facts of this case because no violation of the Jencks Act occurred. We further find that the prosecution proved the appellant's guilt of attempted forcible sodomy beyond a reasonable doubt, and that the appellant was not denied effective assistance of counsel. Therefore, we affirm.

## I. THE JENCKS ACT ISSUE

### a. *Facts*

The prosecution's key witness against the appellant was the victim [LB]. After testifying as to the facts giving rise to the charge against the appellant, the civilian defense counsel cross-examined LB. During cross-examination, LB testified that he gave a statement to the Naval Investigative Service [NIS] concerning the incident. The defense entered this statement, LB's typed, sworn declaration, into evidence as Defense Exhibit T. Near the end of the cross-examination, the following transpired:

Q. Now, after you got home, you went and complained to the recruiters, right?

A. Yes, I did.

Q. About this incident? You made a written statement to them?

A. Yes, I had made a written statement to them.

Q. All right. And that statement detailed what apparently happened the night of the 29th?

A. The statement is the same as the typed statement you have.

Q. It's identical?

A. Yes, it is identical.

Q. Did you type this typed statement?

A. No, I did not type that typed statement.

Q. The NIS agent did?

A. Yes, he did.

Q. Okay. He just took your written statement and retyped it?

A. Yes.

Q. So everything in the statement, that's what you had put in your handwritten statement?

A. Yes.

Q. "For identification purposes, I am a white male, five-eight, weigh 133." That's in your statement?

A. No. That's due to NIS purposes.

Q. All right.

A. Everything—

Q. Okay. So—well, in this statement, you talk about [F]—an MS1 [F]. Was that in your handwritten statement?

A. MS1 [F] was in my handwritten statement, yes.

Q. So you were making complaints about [F] too then?

A. Yes, I was.

Q. Okay. Was this verbatim from your handwritten statement or just—(inaudible)—some of what was in your handwritten statement?

1. I. THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT WHEN HE DID NOT STRIKE [LB'S] TESTIMONY FROM THE GOVERNMENT'S CASE IN CHIEF WHERE THE GOVERNMENT FAILED TO PROVIDE THE DEFENSE WITH A HANDWRITTEN STATEMENT THAT [LB] GAVE TO A GOVERNMENT AGENT BEFORE TRIAL.

II. THE RECORD IS FACTUALLY INSUFFICIENT TO SUPPORT APPELLANT'S CONVICTION FOR ATTEMPTED SODOMY BECAUSE THE GOVERNMENT FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT APPELLANT COMMITTED THE OFFENSE. (FOOTNOTE OMITTED.)

III. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHERE CIVILIAN DEFENSE COUNSEL DID NOT ADEQUATELY PREPARE FOR THE COURT–MARTIAL BY NOT OBTAINING ADEQUATE IMPEACHMENT EVIDENCE. (FOOTNOTE OMITTED.)

A. It's exactly what I had in my hand-written statement.

Record at 94–95. Civilian defense counsel then asked LB to circle those portions of his typed statement that were inserted by the NIS agent, and he circled the first two introductory paragraphs which identified him and gave his reasons for making the statement. He did not circle any of the contents of the statement that pertained to the events on the evening in question. Civilian defense counsel became skeptical that LB actually wrote as well as he did. He asked LB if it was all (including words in parentheses) in his hand-written statement. LB said that it should be because his mother was an English major and he "just about aced every English class" he ever had. Record at 96.

After the prosecution had rested its case, civilian defense counsel raised his Jencks Act objection. The following colloquy between the military judge and him took place:

ICC [civilian defense counsel]: ... At this time the defense would renew its request under the Jencks Act, for the statement that [LB] indicated he gave to the recruiters and was used in compiling the written statement.

MJ [military judge]: Now, you never really made that request before. You may have in an 802 Session.[2]

ICC: I did that in an 802. I haven't pushed it because we have been waiting for NIS to tell us the results of what they're looking for.

MJ: So you are making a Jencks Act request for the written statement that [LB] made to the recruiter?

ICC: To the recruiter and that was used to help put together that type-written statement given to NIS.

MJ: ... And government?

ATC [assistant trial counsel]: Sir, I was just in contact with NIS. NIS says the statement that was given, that has been talked about, were actually notes that were handwritten by [LB]. They consider them as notes, used them for the preparation of the statement. They have no idea where they are at the present time.

MJ: Is there any reason to doubt that that's what NIS said?

ICC: I do not, Your Honor. I mean, I accept the word of trial counsel, if that's what he was told.

Record at 134. The prosecutor then argued that the motion should be denied because the document was not in governmental control, and the typed version was prepared verbatim from the handwritten version, so the defense did have the statement that was made. Civilian defense counsel argued that LB's testimony and the assertion by NIS were in conflict because LB said the statement was typed verbatim and NIS said it was typed from notes. Trial counsel added that NIS provided everything in its control, that they did not have the notes, and that they were apparently destroyed. Finally, the military judge asked:

MJ: There is no evidence that this was done in bad faith?

ICC: No, there isn't.

Record at 137. The military judge then denied the motion to strike LB's testimony and stated that the reason for his decision was the lack of bad faith by NIS or the Government in apparently destroying the notes. Record at 137–38.

b. *Legal Interpretation of the Jencks Act*

■ Congress enacted the Jencks Act, 18 U.S.C. § 3500, in response to the Supreme Court's decision in *Jencks v. United States*, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957). In *Jencks*, the trial court had denied a defense request for witnesses' pretrial statements to the Federal Bureau of Investigation because there had been no demonstrated inconsistencies between such statements and the testimony of the witnesses. The Court noted that its prior decisions did not require the showing of such inconsistencies. Having to demonstrate such consistencies before seeing the statements was an impossible burden for the defense. The Court stressed the importance for the defense to have such statements in cross-examining witnesses and held that the defense request for inspection of the statements

2. Rule for Courts–Martial [R.C.M.] 802, Manual for Courts–Martial, United States, 1984.

**730**

should have been granted. Subsequent interpretation of the Act has indicated that its purpose is not to provide a general right of discovery, but to better enable an accused to impeach witnesses on cross-examination. *Palermo v. United States,* 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959).

The Act itself, which applies to trials by court-martial,[3] provides that after a witness has testified for the United States on direct examination in a criminal case, the court shall, upon motion of the defense, "order the United States to produce any statement ... of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b). If the United States elects not to comply with the court's order to produce the statement, the court may strike the testimony of the witness. 18 U.S.C. § 3500(d). The statute does not expressly state what should happen when the United States elects to comply and attempts to obtain the statement, but for some reason cannot produce it.

■ The statute's silence as to what should happen when the Government is willing but unable to produce the statement has led the courts to find that in appropriate cases, the Government can rely on a "good faith" exception to the Jencks Act. *See Killian v. United States,* 368 U.S. 231, 82 S.Ct. 302, 7 L.Ed.2d 256 (1961); *United States v. Strand,* 21 M.J. 912 (N.M.C.M.R.), *pet. denied,* 22 M.J. 367 (C.M.A.1986). Not every failure to comply with the Jencks Act is necessarily prejudicial. The court must weigh all the circumstances of the case to determine the appropriate course and determine if there is possible prejudice to the defendant. *Albo; United States v. Polizzi,* 500 F.2d 856 (9th Cir.1974), *cert. den.,* 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975); *United States v. Principe,* 499 F.2d 1135 (1st Cir.1974); *United States v. Bigos,* 459 F.2d 639 (1st Cir.1972), *cert. denied,* 409 U.S. 847, 93 S.Ct. 53, 34 L.Ed.2d 88 (1972); *see also, Strand; United States v. Boyd,* 14 M.J. 703 (N.M.C.M.R.1982); *United States v. Bosier,* 12 M.J. 1010 (A.C.M.R.1982); *United*

*States v. Patterson,* 10 M.J. 599 (A.F.C.M.R. 1980).

In *United States v. McCoy,* 848 F.2d 743 (6th Cir.1988), the court found no Jencks Act violation where the prosecutor could not locate the witness' statement, and the defense counsel stated that he was satisfied that the Government had done all it could to find it, did not say that the Government's efforts were not in good faith, and offered no evidence that the Government deliberately destroyed the document.

Other cases have found no Jencks Act violation where the missing statement has been transcribed substantially verbatim into a form that is available to the defense. *United States v. Pena,* 22 M.J. 281 (C.M.A.1986) (tape recordings transcribed substantially verbatim into typewritten investigative reports); *United States v. Guthrie,* 25 M.J. 808 (A.C.M.R.1988) (handwritten draft typed into a second typed statement that duplicated the handwritten statement); *United States v. Durden,* 14 M.J. 507, 509 (A.F.C.M.R.1982) (witness notes destroyed after all information incorporated into prepared statements and no evidence destruction was in bad faith); *United States v. Bastanipour,* 697 F.2d 170 (7th Cir.1982), *cert. denied,* 460 U.S. 1091, 103 S.Ct. 1790, 76 L.Ed.2d 358 (1983) (handwritten interview notes discarded after typed version prepared that contained all of the information in the handwritten version and destruction was unwitting); *United States v. Terrell,* 474 F.2d 872 (2d Cir.1973) (rough notes destroyed in good faith after contents incorporated into official records).

#### c.  *Discussion*

■ Based on the foregoing principles, we find no error by the military judge, notwithstanding the Government's concession to the contrary. LB testified that his handwritten and typed statements were identical except for the first two identifying paragraphs. Therefore, the details that LB related concerning the appellant's alleged offense were in the hands of the defense in Defense Exhibit T and were available to the defense for the purposes of cross-examination. All of the information from the handwritten state-

---

3.  *United States v. Albo,* 22 U.S.C.M.A. 30, 46     C.M.R. 30, 1972 WL 14385 (1972); R.C.M. 914.

ment was included in the typed statement. Moreover, during the discussion of this matter at trial, civilian defense counsel not only did not allege lack of good faith, but he admitted there was no bad faith in the non-production of the handwritten statement. Therefore, just as in *McCoy*, we have a situation where the statement could not be located, the defense counsel was satisfied that the Government had done all it could to find the document, did not allege bad faith, and offered no evidence that the Government deliberately destroyed the document.

We have considered that the prosecution did not call the NIS agent as a witness at trial to explain the circumstances of the loss of LB's handwritten document. Instead, the military judge relied on the proffer of the prosecutor regarding the recollection of the NIS agent, the civilian defense counsel's lack of objection, and his reply that he accepted the representation. While the recollection of the NIS agent was not made in court under oath and subject to cross-examination, this did not preclude consideration of such a proffer and acceptance by the defense as a *de facto* stipulation or agreement even though the appellant did not expressly consent to it. *United States v. Alexander*, 34 M.J. 121, 125 (C.M.A.1992); Mil.R.Evid. 104(a). The military judge rules on admissibility of evidence, but in doing so he is not bound by the rules of evidence, except for privileges, and he can consider any evidence in determining admissibility or resolving interlocutory questions. *United States v. Sanders*, 31 M.J. 834, 838 (N.M.C.M.R.1990); *United States v. Dababneh*, 28 M.J. 929, 934 (N.M.C.M.R.1989). A Jencks Act issue is an example of such an interlocutory question.

The appellant places great reliance on this Court's opinion in *United States v. Kilmon*, 10 M.J. 543 (N.C.M.R.1980). In that case, the agent did not testify as to the circumstances surrounding the destruction of a drug informant's outlines. The Court found their destruction improper in light of the lack of a showing that they were destroyed prior

to contemplation of prosecution or in accordance with a sanctioned routine administrative practice. However, as summarized above, courts have indicated that a good faith loss or destruction of Jencks Act material does not necessarily require the sanction of exclusion of the testimony of the witness whose prior statement is at issue. In the case at bar, civilian defense counsel conceded there was no evidence of bad faith and presented no evidence or proffer that the Government deliberately destroyed the handwritten document. For these reasons, we conclude that *Kilmon* is distinguished from the facts of this case and find no violation of the Jencks Act. *McCoy*.

## II. THE REASONABLE DOUBT ISSUE

The appellant also argues that the prosecution failed to prove his guilt beyond a reasonable doubt because the testimony of LB and of MS2 Gavino is not credible. Having weighed all of the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are convinced beyond a reasonable doubt of the appellant's guilt. Article 66(c), UCMJ; *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987).

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

In a summary assignment of error submitted under *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), the appellant alleges that he was denied effective assistance of counsel because his civilian defense counsel did not interview the prosecution witnesses before trial and did not obtain adequate impeachment evidence. Following the issuance of a Court Order, the appellant submitted an affidavit in support of this assignment of error and the Government has filed an affidavit from the defense counsel. The appellant claims that civilian defense counsel failed to adequately prepare for trial by not interviewing Lay or Gavino and not obtaining a copy of the investigation until December 1992.[4]

---

4. The appellant also impliedly alleges misconduct by the trial counsel in telling Gavino that he "would be getting in more trouble if he changed his story." We reject this allegation based upon

Gavino's testimony that the prosecution only urged him to testify truthfully in court. Record at 245–46.

Civilian defense counsel replies that he made various pretrial discovery requests and met repeatedly with the appellant. He states that all witnesses, including Lay and Gavino, were interviewed before trial. Having examined the affidavits, we agree with the Government that the appellant has not demonstrated either deficiency in his counsel's performance or prejudice. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Lawson,* 40 M.J. 475 (C.M.A.1994); *United States v. Polk,* 32 M.J. 150 (C.M.A.1991); *United States v. Bono,* 26 M.J. 240 (C.M.A.1988); *United States v. Scott,* 24 M.J. 186 (C.M.A. 1987). We find no merit in this assignment of error.

## IV. DISPOSITION

Accordingly, the findings and sentence, as approved on review below, are affirmed.

Senior Judge MOLLISON and Judge CLARK concur.