70 F.3d 116
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Elizabeth S. REYNOLDS, Defendant-Appellant.
 No. 94-6577.
 United States Court of Appeals, Sixth Circuit.
 Oct. 18, 1995.
 
 1
 Before: MERRITT, Chief Judge; KENNEDY, Circuit Judge, and JOINER, District Judge.*
 
 ORDER
 
 2
 Elizabeth Reynolds appeals her two-count criminal conviction entered after a jury trial. The parties have waived oral argument and, upon examination, this panel unanimously agrees that oral argument is not needed. Fed.R.App.P. 34(a).
 
 
 3
 In 1993, Elizabeth Reynolds and her son, David Loyless, were named in a four-count indictment for counterfeiting and fraud. Loyless eventually pleaded guilty to one count of counterfeiting, but Reynolds elected to go to trial before a jury. The jury found Reynolds not guilty of the two counterfeiting charges and guilty of aiding and abetting in mail fraud, in violation of 18 U.S.C. Secs. 2 and 1341, and aiding and abetting in wire fraud, in violation of 18 U.S.C. Secs. 2 and 1342. Reynolds received an aggregate 2 month term of imprisonment. This appeal followed and the parties have briefed the issues through counsel.
 
 
 4
 In 1992, David Loyless was suspected of making and circulating counterfeit notes. Loyless thereafter gave a full confession, implicated his mother (Elizabeth Reynolds) and consented to a search of the dwelling where they resided. The search yielded a color photocopying machine and other related materials. Reynolds was arrested and released. The counterfeiting prosecution was based largely on the discovery of the photocopying equipment and incriminating testimony offered by Loyless.
 
 
 5
 Loyless was at liberty in July 1993, when Reynolds reported to police that her pickup truck had been stolen from her driveway. Reynolds later called her insurance carrier in Virginia to report the theft and mailed in her claim to them. The wire and mail fraud prosecutions (for a fraudulent insurance claim) were based on the testimony of Loyless, corroborated by others, that the truck had not been stolen but that, in fact, Loyless had towed the truck from Reynolds's driveway with her permission and assistance.
 
 
 6
 Reynolds moved for the severance of the counterfeiting counts from the fraud charges pursuant to Fed.R.Crim.P. 14 prior to trial. The motion and accompanying brief contained the assertions that the allegations in support of the counterfeit charges "bear no relevance" to the fraud allegations and that a joint trial would "unduly burden" the defendant. The court denied the motion "without prejudice" but counsel for Reynolds did not thereafter renew the motion.
 
 
 7
 The government proceeded to trial against Reynolds. The counterfeiting case included, inter alia, testimony of David Loyless, who had previously entered into a plea agreement with the government. Loyless testified that he personally saw Reynolds purchase color photocopying equipment and then make facsimiles of United States currency which she gave to Loyless to circulate. The proof of wire and mail fraud consisted, again, of Loyless testifying against his mother. Loyless related that Reynolds had given him permission to have the pickup truck towed from the driveway and repaired. He contended that Reynolds was present when the tow truck arrived and that she packed a suitcase for Loyless and placed it in the bed of the pickup truck as it was being rigged for towing. This version of events was substantially corroborated by others. Reynolds denied having any part in the events.
 
 
 8
 Counsel for Reynolds conducted an extensive cross-examination of Loyless and, at one point, asked Loyless if he had previously stolen jewelry and other items from his mother. Loyless invoked his Fifth Amendment privilege and refused to answer. Counsel for Reynolds responded with the suggestion that Loyless had already answered the same questions under oath at the suppression hearing. Loyless indicated that he thought the question at the suppression hearing was directed to the activities of his friends. The court then permitted defense counsel to read the earlier question and response from that portion of the suppression hearing transcript into the record.
 
 
 9
 Counsel for Reynolds brings two assignments of error in this appeal. Counsel first contends that the decision to deny the motion to sever the counterfeit and fraud charges was reversible error.
 
 
 10
 Criminal Rule 14 provides that a trial court may order separate trials of counts if it appears that a defendant is prejudiced by a joinder of offenses. The resolution of a Rule 14 motion is left to the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. United States v. McCoy, 848 F.2d 743, 744 (6th Cir.1988). A successful movant will not prevail on appeal absent a strong showing of substantial, undue or compelling prejudice, United States v. Warner, 971 F.2d 1189, 1196 (6th Cir.1992), and a demonstration of the inability of the jury to separate and treat distinctively the elements sought to be severed. United States v. Gallo, 763 F.2d 1504, 1524-25 (6th Cir.1985), cert. denied, 474 U.S. 1068 and 1069, and cert. denied, 475 U.S. 1017 (1986).
 
 
 11
 In the case at bar, there is absolutely no showing of prejudice of any kind to Reynolds's defense by the failure to sever the counts for trial. The claimed "spillover" effect of the testimony on the counterfeiting charges is pure speculation in light of the jury's decision to acquit on those very counts. The court's charge to the jury adequately emphasized the need to consider the evidence and counts separately and the verdict reflects the jury's ability to follow this instruction. This issue lacks merit.
 
 
 12
 Reynolds's final appellate contention is that she was denied her Sixth Amendment right of confrontation when her son, David Loyless, invoked his Fifth Amendment right not to answer a potentially incriminating series of questions on cross-examination. Cross-examination is the principal method by which the credibility of a witness and the truth of his testimony is subject to test. Davis v. Alaska, 415 U.S. 308, 316 (1974). A defendant's Sixth Amendment right to discredit a witness through rigorous cross-examination must yield, however, to a properly asserted Fifth Amendment privilege against self-incrimination. Alford v. United States, 282 U.S. 687, 694 (1931). A witness properly invokes Fifth Amendment protections if the trial court determines that the answer to the particular question would subject the witness to a real danger of further incrimination. Rogers v. United States, 340 U.S. 367, 374 (1951). Once a witness has properly invoked his Fifth Amendment privilege, the question arises as to the propriety of permitting the remainder of his testimony to go into evidence. The remainder of the testimony should be stricken only if there is a "substantial danger of prejudice" arising from the defendant's inability to challenge that testimony. United States v. Gullett, 713 F.2d 1203, 1208 (6th Cir.1983) (quoting Fountain v. United States, 384 F.2d 624, 628 (5th Cir.1967), cert. denied, 390 U.S. 1005 (1968)), cert. denied, 464 U.S. 1069 (1984).
 
 
 13
 In the present case, it is clear that Reynolds suffered no prejudice from her inability to question Loyless about possible incidents of theft from her home. First, the previous answer was read into the record with the consent of Reynolds's counsel. In addition, the need for further impeachment of Loyless's character would seem unnecessary in light of the extensive unfavorable evidence of Loyless's character that was placed before the jury. This claim, as well as the entire appeal, lacks merit.
 
 
 14
 Accordingly, the district court's judgment is affirmed.
 
 
 
 *
 The Honorable Charles W. Joiner, United States District Judge for the Eastern District of Michigan, sitting by designation